**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALISHA PRICE | Case No.: 2:24-cv-05684-GAM |
| v. | Civil Action |
| KOHN, SWIFT & GRAF, P.C. and NEIL L. GLAZER | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2025, upon

consideration of the Motion and Brief in Support of Motion to Dismiss Plaintiff's

Complaint of Defendants, Kohn, Swift & Graf, P.C. and Neil L. Glazer, it is hereby

ORDERED and DECREED that the Motion to Dismiss is GRANTED.

**BY THE COURT:**

_____
J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALISHA PRICE | Case No.: 2:24-cv-05684-GAM |
| v. | Civil Action |
| KOHN, SWIFT & GRAF, P.C. and NEIL L. GLAZER | |

## MOTION OF DEFENDANTS KOHN, SWIFT & GRAF, P.C. AND NEIL L. GLAZER TO DISMISS PLAINTIFF'S COMPLAINT

Defendants, Kohn, Swift & Graf, P.C. and Neil L. Glazer ("Defendants") hereby move pursuant to Federal Rule of Civil Procedure 9(b) and 12(b)(6) to dismiss plaintiff's complaint with prejudice.  Defendants rely on the arguments raised in the accompanying memorandum of law in support of this motion to dismiss.

**MARSHALL DENNEHEY P.C.**

By    _____
            Josh J.T. Byrne, Esquire
            2000 Market Street, Ste. 2300
            Philadelphia, PA 19103
            (215) 575-2805
            JTByrne@mdwcg.com
            Attorney for Defendants

Date:  September 19, 2025

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALISHA PRICE | Case No.: 2:24-cv-05684-GAM |
| v. | Civil Action |
| KOHN, SWIFT & GRAF, P.C. and NEIL L. GLAZER | |

**BRIEF OF DEFENDANTS KOHN, SWIFT & GRAF, P.C. AND NEIL L. GLAZER IN SUPPORT OF MOTION TO DISMISS**

## I.    Introduction

Defendants, Kohn, Swift & Graf, P.C. and Neil L. Glazer ("defendants"), by and through counsel, Marshall Dennehey, P.C., move this Court pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) to dismiss plaintiff's complaint, with prejudice. The gravamen of plaintiff's complaint is that plaintiff retained defendants to assist her in dealing with a subpoena issued to her by the Department of Justice as part of an investigation of an organization known as OneTaste, whose founders have been convicted for their part in a forced labor conspiracy, but that defendants were also interested in having plaintiff as a potential client in a civil action against OneTaste. As set forth in the complaint: 1) Plaintiff received as subpoena from the FBI requesting that she give information about OneTaste; 2) Plaintiff retained defendants for the limited purpose of responding to the subpoena; 3) Plaintiff asked for help to deal with the repercussions the investigation was having on her mental health; 4) Defendants put plaintiff in touch with federal victim witness specialists; 5) Plaintiff did not provide information to the FBI; and 6) The relationship between plaintiff and defendants was

terminated at Plaintiff's request.  *See*, Exhibit "A" at ¶¶ 43, 47, 65-66, 99. There is no factual or legal basis for any of the claims asserted in the complaint.

## II.    Factual Background and Procedural History

### A.    Underlying Representation

The present action arises out of defendants' representation of plaintiff after she received a subpoena relating to the FBI's investigation into OneTaste.  Plaintiff's complaint, attached hereto as Exhibit "A" at ¶¶ 19, 43, 47.  Plaintiff was served with the subpoena in April, 2021.  Exhibit "A" at ¶ 43.  Plaintiff was told by the FBI that she had no choice but to speak to them.  Exhibit "A" at ¶ 46.  Plaintiff contacted defendant Neil L. Glazer by email on April 6, 2021, stating: "I'm interested in speaking with you regarding possible representation of me as a victim in a federal case."  Email of April 6, 2021, attached hereto as Exhibit "B."

On April 8, 2021, plaintiff entered into a retention agreement with Kohn, Swift & Graf, P.C. which included a choice of law and choice of forum provision.  Engagement agreement, attached hereto as Exhibit "C."  The choice of law provision provides that the agreement: "shall be governed by the laws of Pennsylvania, regardless of the place of execution or performance."  Exhibit "C."  Plaintiff paid defendants $2,500 to provide representation in connection with the subpoena and plaintiff's communications with the United States Attorney's Office.  Exhibit "A" at ¶¶ 48, 49; Exhibit "C."  As set forth in the agreement, the scope of representation was limited to representation:

> [I]n connection with an investigation by the United States government
> concerning OneTaste, Nicole Daedone and/or other persons and entities
> affiliated with or connected to them ("the OneTaste Parties") (this
> "Matter). As we discussed, we will agree to represent you in connection
> with this Matter during an initial phase in which we can provide you with
> limited services (the "Services") that can be handled via telephone, email
> and other means that do not require any travel on our part with respect to

this Matter for a flat fee of two-thousand five hundred dollars ($2,500.00). This will include communications with you as well as with the U.S. Attorney's Office and the FBI (and any other governmental agencies that might be involved in this Matter), and it will also include working with you remotely to review, preserve, collect and, if required, produce documents, communications and other materials to the United States government.

Exhibit "C."

In April 2021, plaintiff had an interview with Mr. Glazer and a legal assistant during which plaintiff asserts she stated she did not believe she was a victim of a crime. Exhibit "A" at ¶¶ 55-56. Plaintiff asserts that Mr. Glazer informed plaintiff that she would have to speak with the FBI. Exhibit "A" at ¶ 51.

Plaintiff asserts she felt anxiety and depression due to the FBI investigation which allegedly resulted in her termination from her job in September 2021. Exhibit "A" at ¶¶ 60-62. After her termination, plaintiff asked Mr. Glazer to "get her help to deal with the enormous repercussions" the investigation was having on her mental health and livelihood. Exhibit "A" at ¶ 65. According to the complaint, Mr. Glazer put plaintiff in touch with a victim witness specialist "from the federal government." Exhibit "A" at ¶ 66. Plaintiff alleges when she spoke to the crime victim specialist plaintiff "told him that the FBI's unwelcome intrusion into her life was causing her great distress, he told Plaintiff she was wrong and that the conduct she had experienced at OneTaste was the cause of her distress." Exhibit "A" at ¶ 71. Plaintiff was then referred to a female federal agent who connected plaintiff to an "organization that supported sex trafficking victims." Exhibit "A" at ¶ 72. Plaintiff spoke with that organization, but decided it would not be helpful. Exhibit "A" at ¶¶ 74-76. Plaintiff asserts Mr. Glazer refused to return her phone calls at that point. Exhibit "A" at ¶ 77.

In August 2022, Mr. Glazer contacted plaintiff and informed her that the FBI was requesting that she travel to New York City to give sworn testimony.  Exhibit "A" at ¶ 78. Plaintiff's complaint asserts she told Mr. Glazer she did not want to be involved.  Exhibit "A" at ¶ 79.  According to the complaint, Mr. Glazer told plaintiff that if OneTaste's founder was found guilty as a result of the FBI investigation, then plaintiff could be part of a civil action that potentially would be "very lucrative for Plaintiff."  Exhibit "A" at ¶ 83.  Plaintiff indicated she did not want to  give a deposition.  Exhibit "A" at ¶ 84.

According to the complaint, plaintiff then contacted another federal victim specialist.  Exhibit "A" at ¶ 86.  Plaintiff then told Mr. Glazer to leave her alone.  Exhibit "A" at ¶ 92.  Plaintiff terminated Mr. Glazer's representation on September 13, 2022. Exhibit "A" at ¶ 92.  Plaintiff asserts she requested her file, but it has not been produced to her.  Exhibit "A" at ¶ 104.

There is no allegation in the complaint that plaintiff had to give a statement or attend a deposition as a result of the subpoena issued to her.  There is no allegation that plaintiff was held in contempt as a result of the subpoena, or that she has been involved in the FBI investigation in any manner since her discussions with the federal victim specialists.  The complaint is completely devoid of any assertion which suggests there was something defendants could have done which would have better served plaintiff with respect to responding to the subpoena.

As asserted in the complaint, plaintiff was served with a subpoena.  Plaintiff paid defendants to represent her with respect to responding to the subpoena.  Plaintiff did not have to give testimony or provide documents in response to the subpoena. Plaintiff's complaint is full of hyperbole suggesting defendants did something wrong, but empty of facts to support any such contention.

### B.    Plaintiff's Complaint

Plaintiff's complaint starts with a multi-paragraph apology/hagiography for OneTaste.  Exhibit "A" at ¶¶ 2-10.  As identified in the complaint, the founders of OneTaste, Nicole Daedone and Rachel Cherwitz were indicted on conspiracy to violate 18 U.S.C. §1589 (Forced Labor) in the Eastern District of New York on April 3, 2023. Exhibit "A" at ¶ 11.  Ms. Daedone and Ms. Cherwitz have since been convicted and are awaiting sentencing.  The complaint asserts defendants "operated a crime-victims mill for personal profit," without identifying what that term means or identifying any factual basis for this scandalous assertion.  Although defendants are well known for successfully pursuing civil claims on behalf of victims of human trafficking, sex trafficking and labor trafficking, such as those Ms. Daedone and Ms. Cherwitz have been convicted of victimizing, the term "crime-victims mill" is inaccurate and absurd.

Plaintiff's complaint includes eight separate counts.  The first count of plaintiff's complaint purports to state a claim for legal malpractice.  The averments of this count amount to nothing more than a statement that defendants did not exercise ordinary skill and knowledge and that plaintiff would "have had a better result in the underlying matter for which she had retained the Attorney Defendants but for the Attorney Defendants' negligence."  Exhibit "A" at ¶¶ 106-107.  Plaintiff does not assert what better result could have been achieved in representing plaintiff in responding to a subpoena than not having to make a statement and not having to produce documents.  Plaintiff asserts damages including "loss of employment and litigation expenses incurred in an attempt to reduce the damage caused by the Attorney Defendants' conduct. . ."  Exhibit "A" at ¶ 108.  However, the complaint asserts that plaintiff lost her employment as a

result of stress that arose from contact with the FBI, not from any alleged negligent act of Defendants.  Exhibit "A" at ¶ 61.

The second count of the complaint purports to assert a claim for fraud.  Plaintiff alleges defendants "made material misrepresentations and omissions of fact in that they failed to disclose to Plaintiff that their true intention was to use their representation of Plaintiff to groom her as a 'crime victim' in support of a criminal indictment that would ultimately serve as the basis for civil litigation against OneTaste for the financial benefit of the Attorney Defendants."  Exhibit "A" at ¶ 110.  There are no facts alleged in the complaint to support a claim for fraud under Rule 9(b).  The phrase "groom her as a 'crime victim'" is used without identifying what that term means or identifying any factual basis for this scandalous assertion.  The complaint continues to asserted defendants "knew that they were making material misrepresentations and omissions of fact because the Attorney Defendants were aware of the scheme at the time that it was being perpetrated, as it is the Attorney Defendants' business model and the Attorney Defendants have used advertising to solicit crime victims."  Exhibit "A" at ¶ 111.

The averment that defendants have represented plaintiffs, *inter alia*, seeking civil recoveries from victims of crime including forced labor and sex trafficking is undeniably true.  However, there has never been any misrepresentation of that fact which is clearly stated on defendants' website, and defendants continue to believe that plaintiff sought them out because of their prior experience in representing victims of cults, such as OneTaste.  Indeed, in her initial email to defendants, plaintiff self described herself as a "victim."  Exhibit "B."  Despite this, there are no facts alleged to support a contention that defendants did anything other than represent plaintiff in connection with a duly

issued subpoena.  The averment that defendants were "working to help the FBI" in dereliction of a duty owed to plaintiff is unsupported by <u>any</u> pleaded fact.

The third count of plaintiff's complaint purports to assert a claim for intentional infliction of emotional distress.  Without reference to any fact, this count asserts defendants' conduct was "shocking and repugnant conduct that should not be tolerated in a civilized society by members of any respectable profession, let alone, by attorneys who have legal and ethical duties to their clients."  Exhibit "A" at ¶ 121.  As with the rest of plaintiff's complaint, there are no factual allegations which support this hyperbolic statement.  The complaint asserts defendants' "conduct caused Plaintiff to suffer debilitating emotional distress and harm."  Exhibit "A" at ¶ 122.  As with the other claims, plaintiff claims she suffered loss of employment and litigation expenses.  Exhibit "A" at ¶ 123.  This claim also asserts defendants violated "legal and ethical duties."  Exhibit "A" at ¶ 123.  The fourth count of plaintiff's complaint asserts a claim for negligent infliction of emotional distress.  Exhibit "A" at ¶¶ 120-123.  The allegations of this count generally mirror the third count of the complaint.

The fifth count of plaintiff's complaint purports to state a claim for violation of New York Judiciary Law § 487.  Plaintiff asserts defendants intended to deceive plaintiff and intended to delay her matter.  The count does not assert how defendants intended to deceive plaintiff.  This count does not identify any "deceit or collusion" directed towards any court or any party to any litigation, nor does it describe a willful delay of any suit.  Moreover, there is no basis to apply New York law to this action.

The sixth count of plaintiff's complaint purports to state a claim for unjust enrichment.  Plaintiff does not identify any funds received by defendants other than the initial retainer.  Exhibit "A" at ¶ 129.  However, plaintiff also alleges: "Defendants were

enriched even further as they capitalized on their dishonesty and manipulation of the Plaintiff to sue OneTaste civilly for damages which they have and will obtain legal fees from." Exhibit "A" at ¶130.

The seventh count of plaintiff's complaint purports to assert a breach of fiduciary duty. Without reference to any facts, plaintiff asserts defendants "created their own conflict of interest and capitalized on the same." Exhibit "A" at ¶ 134.

The eighth count of the complaint purports to assert a claim for Breach of Contract. This count generally alleges defendants "breached the Retainer Agreement by failing to act and acting to Plaintiff's detriment." Exhibit "A" at ¶ 141. However, there is no identification on a specific executory provision of the contract which was breached.

Plaintiff's "prayer for relief" seeks "punitive and exemplary damages" and "an award of interest, including prejudgment interest.

## III.  Legal Standard

### A.    12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To avoid dismissal and establish the grounds of entitlement to relief, a plaintiff must plead "enough factual matter" to "nudge claims across the line from conceivable to plausible." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)). A plaintiff is obligated to establish the grounds of entitlement to relief with more than mere labels and conclusions. *Twombly*, 550 U.S. at 555 (quotations omitted).

Only a complaint that sets forth a claim which is plausible on its face will survive a motion to dismiss. *Id*. at 679. Although a valid complaint requires only a "short and

plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), the "plaintiff must at a minimum state the operative facts underlying the claim." *Herman v. Carbon County*, 248 Fed. Appx. 442, 444 (3d Cir. 2007) (citations omitted). If the complaint and accompanying documents considered by the court fail to allege sufficient facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," then the claim is not facially plausible and it must be dismissed. *Iqbal*, 556 U.S. at 678.

Conclusory statements and "a formulaic recitation of the elements of a cause of action will not do," *Twombly*, 550 U.S. at 555, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements [are] not suffic[ient]" to defeat a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678. Accordingly, a complaint fails to state a claim when accepting all well–pled factual allegations as true, the allegations to do not "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679).

The Third Circuit has offered a three-step process to be undertaken when deciding whether a claim has been sufficiently plead and should therefore survive a motion to dismiss. *Id.* First, the court identifies the claim specific elements a plaintiff must plead in order to state a claim for relief. *Id.* Second, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id.* Third, the court will look to the remaining well-pled facts and assuming those facts are true, "determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679) (internal quotations omitted). The third step is a "context-specific task that requires the reviewing court to draw on its

judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679) (internal quotations omitted).

### B.    Choice of Law

Subject matter jurisdiction in this case is based on the diversity statute, 28 U.S.C. § 1332(a).  Exhibit "A" at ¶ 38.  Therefore, this Court "must apply the choice of law rules of the forum state," here, Pennsylvania.  *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994). The starting point in this Court's analysis should be the choice of law clause in the retention agreement.  *Bookard v. Estee Lauder Companies, Inc.*, 443 F. Supp. 3d 561, 569–70 (E.D. Pa. 2020).  The retention agreement provides that the agreement: "shall be governed by the laws of Pennsylvania, regardless of the place of execution or performance."  Exhibit "C."  "Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them."  *Kruzits*, 40 F.3d at 55 (citation omitted).  Pennsylvania courts have adopted § 187 of the Restatement (Second) of Conflict of Laws.  *Id.*  Section 187 provides that a choice of law clause will be enforced:

> unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which ... would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187.  The first exception is not applicable here as defendants are located in Pennsylvania and provided services to plaintiff from Pennsylvania.  Application of Pennsylvania law is not contrary to any fundamental policy of any other state which may have an interest in this matter.

## IV.    Argument

### A.    Plaintiff has not stated a claim for legal malpractice

Count I of plaintiff's complaint purports to assert a claim of legal malpractice (professional negligence).  In order to state a cause of action under Pennsylvania law for legal malpractice, a plaintiff must plead and prove the following elements:

> (a)    the employment of the attorney or other basis for duty;
>
> (b)    the failure of the attorney to exercise ordinary skill and knowledge; and
>
> (c)    that the attorney's negligence was the proximate cause of damage to the plaintiff, i.e., actual loss or harm.

*See, Steiner v. Markel*, 968 A.2d 1253 (Pa. 2009); *Rizzo v. Haines*, 555 A.2d 58 (Pa. 1989).  There is no presumption that an attorney is guilty of negligence arising merely from a bad result.  Moreover, an attorney's exercised of informed judgment, even if later proven erroneous, is not negligence.  *Mazur v. Sec. Ins. Group*, 368 F. Supp. 418 (E.D.Pa. 1973).

The mere breach of a professional duty, causing only nominal damage, speculative harm or the threat of future harm does not establish a cause of action for negligence.  *Rizzo*, 555 A.2d at 68.  A plaintiff must prove actual loss.  *See, e.g. Pecina v. Law Offices of J. Sansone*, 2020 Pa. Super. Unpubl. LEXIS 678 (Pa. Super. 2020) (it was not enough for plaintiff to plead that arguments and evidence were not presented in plaintiff's job loss claim; she had to prove the actual availability of the job and that she would have been re-hired, but for the malpractice).  Thus, it ***not enough*** that the attorney may have "increased the risk of harm" to the plaintiff.  *See*, *Myers v. Robert*

*Lewis Seigle*, 751 A.2d 1182, 1185 (Pa. Super. 2000).  As the Supreme Court of

Pennsylvania has held:

> An essential element to this cause of action is proof of actual loss rather than a breach of a professional duty causing only nominal damages, speculative harm or the threat of future harm. . . . In essence, a legal malpractice action in Pennsylvania requires the plaintiff to prove that he had a viable cause of action against the party he wished to sue in the underlying case and that the attorney he hired was negligent in prosecuting or defending that underlying case (often referred to as proving a "case within a case").

*Kituskie v. Corbman*, 552 Pa. 275, 281, 714 A.2d 1027, 1030 (1998) *citing to Rizzo,*

*supra*.  A legal malpractice plaintiff in must plead and prove they would have succeeded

in their goal for the representation, but for the alleged negligence:

> To prove actual injury, plaintiffs must prove that the underlying legal representation would have achieved whatever the plaintiffs hoped to achieve. While this analysis is tailored to the particular context of the facts underlying the basis for the legal malpractice claim, in all cases a plaintiff must prove "actual loss," meaning that if the underlying action, be it a case, transaction or patent prosecution, would have failed regardless of the defendant's professional negligence, then the plaintiffs have not suffered actual loss. In the litigation context, a plaintiff must prove that, but for his attorney's negligence, a different result would have occurred in the litigation.

*FCS Cap. LLC v. Thomas*, 579 F. Supp. 3d 635, 649 (E.D. Pa. 2022).

In the present matter, plaintiff's assertion regarding alleged  negligence is

exceptionally vague.  The averments of this count are nothing more than a statement

that defendants did not exercise ordinary skill and knowledge and that plaintiff would

"have had a better result in the underlying matter for which she had retained the

Attorney Defendants but for the Attorney Defendants' negligence."  Exhibit "A" at ¶¶

106-107.  This is the very definition of a conclusory statement, and cannot suffice to

maintain a claim.

Plaintiff retained defendants "on or about April 8, 2021, after she had been subpoenaed by the FBI to provide information on OneTaste." Exhibit "A" at ¶ 19. Plaintiff contacted defendants asserting she was a "victim." Exhibit "B." Plaintiff asserts she "retained Defendants to represent her in connection with responding to the subpoena." Exhibit "A" at ¶ 47.

Plaintiff has not asserted any facts which would begin to suggest that defendants deviated from the standard of care with respect to assisting plaintiff in her response to the subpoena. Plaintiff has not identified any action that defendants did not take that an attorney acting within the standard of care would have taken. Plaintiff does not suggest that the subpoena was improper or unwarranted, or that there was any basis for plaintiff to otherwise legal oppose the subpoena.

Plaintiff has not identified any breach of duty, nor has plaintiff identified any harm whatsoever related to the representation with respect to the subpoena response. Plaintiff's complaint does not suggest that she ever responded to the subpoena by providing documents or a statement, or suffered any consequences for not responding to the subpoena. Plaintiff does not assert what better result could have been achieved in representing plaintiff in responding to a subpoena than not having to make a statement and not having to produce documents.

Fundamentally, plaintiff has not identified any action(s) by defendants which breached the standard of care or which could have led to a better outcome for the representation. Plaintiff has not identified a breach of the applicable standard of care

and cannot maintain a claim for professional liability.  Plaintiff has no actual loss and cannot maintain a claim for professional liability.[1]

### B.    Plaintiff has not Stated a Claim for Fraud

To succeed in a fraud case, a plaintiff must establish the following elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Gruenwald v. Advanced Computer*, 730 A.2d 1004, 1014 (Pa. Super. 1999) (*citing Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d 882, 889 (1994)); *Bash v. Bell Tel. Co.*, 411 Pa. Super. 347, 601 A.2d 825, 831 (1992); *Elia v. Erie Ins. Exch.*, 398 Pa. Super. 433, 581 A.2d 209, 212 (Pa. Super. 1990) (finding no cause of action for fraud absent misrepresentation intended to cause plaintiff to act and subsequent justifiable reliance by plaintiff).  A claim for fraudulent misrepresentation requires the misrepresentation be communicated intentionally or recklessly, and that it be intended to induce action on the part of the recipient.  *Woodward v. Dietrich*, 378 Pa. Super. 111, 548 A.2d 301, 308, n. 5 (Pa. Super. 1988); *Kurtz v. American Motorists Ins. Co.,* 1995 U.S. Dist. LEXIS 17417 (E.D. Pa. Nov. 21, 1995).  Allegations of fraud must consist of more than legal conclusions.  *Bash, supra.*  Statements as to future or contingent events, to expectations

---

[1] Plaintiff appears to acknowledge the lack of actual damages by alleging that she "suffered actual and ascertainable damages in the form of loss of employment and litigation expenses incurred in an attempt to minimize or reduce the damage caused by the Attorney Defendants' wrongful conduct."  However, plaintiff's own complaint asserts that she lost her employment as a result of stress that arose from contact with the FBI.  Exhibit "A" at ¶ 61.  There is nothing whatsoever in the complaint to suggest that plaintiff had any "litigation expenses" other than the $2,500 in attorneys fees she paid defendants.

or probabilities, or as to what will or will not be done in the future, do not constitute misrepresentations, even though the statements may turn out to be wrong. *Krause v. Great Lakes Holdings, Inc.,* 387 Pa. Super. 56, 563 A.2d 1182, 1187 (1989), *allocatur denied,* 524 Pa. 629, 574 A.2d 70 (1990); *Coleman v. Sears, Roebuck & Co.*, 319 F. Supp. 2d 544, 551 (W.D. Pa. 2003)..

All allegations of fraud must meet the heightened pleading standard of Federal Rule of Civil Procedure Rule 9(b) (the "particularity" requirement). The heightened pleading standard "not only gives defendants notice of the claims against them, but also provides increased measure for protection of their reputation and reduces the number of frivolous lawsuits brought solely to extract settlements." *Gross v. Coloplast* Corp., 434 F. Supp. 3d 245, 249 (E.D. Pa. 2020) *citing to In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997). Where "facts are missing, and the allegations [of fraud] are completely conclusory," dismissal is appropriate. *Id.*

To satisfy the heightened pleading requirement, a pleading must describe "the circumstances of the alleged fraud with precise allegations of date, time, or place, or by using some means of injecting precision and some measure of substantiation into [the] allegations of fraud." *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 172 n. 10 (3d Cir. 2002) (internal quotation marks and citation omitted). As our courts have repeatedly stated, "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *United States ex rel. Ellsworth Assoc., LLP v. CVS Health Corp.*, 660 F. Supp. 3d 381, 393 (E.D. Pa. 2023) (internal quotation marks and citation omitted).

Here, plaintiff's complaint is completely deficient in describing: 1) any representation made by defendants which was material to the representation with respect to the subpoena; 2) which was made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; 3) made with the intent of misleading plaintiff into relying on it; 4) upon which plaintiff justifiably relied. The "facts" section of the complaint does not describe any false statement made by any defendant to plaintiff. In Count II, plaintiff asserts defendants "failed to disclose to Plaintiff that their true intention was to use their representation of Plaintiff to groom her as a "crime victim" in support of a criminal indictment that would ultimately serve as the basis for civil litigation against OneTaste for the financial benefit of the Attorney Defendants." Exhibit "A" at ¶ 110. In other words, plaintiff alleges that she went to a law firm whose on-line presence and reputation is for representing victims of sex-trafficking cults such as OneTaste, describing herself as a victim, and she was surprised that in addition to assisting in a subpoena response, defendants attempted to sign her up as a client for a potential civil litigation against OneTaste.

There is no misrepresentation by any defendant identified in the complaint. Plaintiff does not identify how she got to defendants. Exhibit "A" at ¶ 19. There is nothing in the complaint to suggest that defendants ever represented themselves as anything other than one of the law firms with experience representing victims of sex trafficking and forced labor. It appears that plaintiff's hyperbolic assertion that defendants sought to "groom [plaintiff] as a 'crime victim'" relates to a discussion in August 2022, where Mr. Glazer and plaintiff allegedly discussed the possibility of plaintiff traveling to New York to testify. Exhibit "A" at ¶¶ 78-83. According to the complaint, Mr. Glazer stated that if Daedone was found guilty (as she subsequently was)

then plaintiff could potentially be part of a lucrative civil suit. Exhibit "A" at ¶ 83. Accepting for purposes of this motion that the discussion with Mr. Glazer was as set forth in these paragraphs, there is no misrepresentation by Mr. Glazer. Moreover, plaintiff did not "rely" on these statements as she told Mr. Glazer that she did not want to testify in the criminal action or be part of a civil suit. Exhibit "A" at ¶¶ 79, 84. Plaintiff has not stated a claim for fraud and Count II of plaintiff's complaint should be dismissed.

### C.    Plaintiff has not Stated a Claim for Intentional or negligent Infliction of Emotional Distress

Initially, in Pennsylvania, it has generally been held that attorneys do not have a duty to protect their clients from psychological harm caused by their conduct. *Schwarz v. Frost*, 40 Pa. D. & C.4th 364, 378 (Pa. Com. Pl. 1998), *aff'd sub nom. Schwartz v. Frost*, 734 A.2d 446 (Pa. Super. 1998). The measure of damages in a legal malpractice case is the pecuniary loss sustained in the underlying legal proceedings as a result of the attorney's alleged malpractice. See *Myers v. Robert Lewis Seigle, P.C.,* 751 A.2d 1182, 1185 (Pa. Super. 2000) (In order to prove actual injury, a plaintiff "must demonstrate that he would have prevailed in the underlying action in the absence of his attorney's alleged negligence.") "Although it may impose a particular hardship on a malpractice plaintiff to show that he would have prevailed in the underlying action in order to establish actual damages, the potential problems facing attorneys in the absence of such a rule would seem more monumental." *Kituskie v. Corbman*, 714 A.2d 1027, 1029-1030 (Pa. Super. 1998).

The Pennsylvania Supreme Court has "never expressly recognized a cause of action for intentional infliction of emotional distress," however, it has cited the

Restatement of Torts "as setting forth the minimum elements necessary to sustain such a cause of action." *Taylor v. Albert Einstein Med. Ctr.*, 562 Pa. 176, 181, 754 A.2d 650 (2000). The Restatement of Torts (2d) § 46 provides that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Pennsylvania case law similarly establishes that a claimant may not recover for negligent infliction of emotional distress in the absence of physical injury. *Itskowitz v. White & Williams, LLP*, No. 002926 MAY.TERM 2003, 2004 WL 1593665, at *5 (Pa. Com. Pl. June 25, 2004), *citing to Rolla v. Westmoreland Health System*, 438 Pa.Super. 33, 651 A.2d 160, 163 (Pa. Super. 1994) (*quoting Hart v. O'Malley*, 436 Pa.Super. 174, 647 A.2d at 553).

With respect to intentional infliction of emotional distress, the Restatement defines "extreme and outrageous conduct" as follows:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Id*., comment d, *see also, Shrader v. Siana & Vaughan, LLP*, No. CIV. A. 03-3510, 2005 WL 975411, at *4 (E.D. Pa. 2005). Pennsylvania courts also require a plaintiff to establish physical injury in connection with a defendant's conduct in order to state a claim for intentional infliction of emotional distress. *Hart v. O'Malley*, 436 Pa. Super. 151, 174, 647 A.2d 542 (Pa. Super. 1994); *see also Edwards v. Wyatt*, 2001 WL 1382503,

at *5 (E.D. Pa. 2001) (dismissing counterclaims for intentional infliction of emotional distress where party only alleged suffering "financial harm and emotional stress").

As in *Hart* and *Itskowitz*, this action which is premised as a legal malpractice action, fails to allege a physical injury and therefore no claim for intentional infliction of emotional distress can be maintained.  As the court noted in *Itskowitz*, "the complaint alleges forms of emotional distress with transitory physical phenomena. . . . Such allegations are insufficient to state a claim for intentional infliction of emotional distress and negligent infliction of emotional distress."  *Itskowitz, supra*.

Moreover, the allegations of the complaint suggest that the emotional distress to plaintiff resulted from the existence of the subpoena, an alleged threat by the FBI to arrest her if she did not participate, and the FBI's interest in having a discussion with her.  *See*, Exhibit "A" at ¶ 61 ("Between May and September 2021, Plaintiff continued to feel immense anxiety and stress as a result of being told by the FBI that she had to participate in their investigation against her will which interfered in her ability to focus and perform her duties at work became severely compromised."); *see also*, Exhibit "A" at ¶¶ 50, 53, 60, 62.

Finally, there is no basis for a contention that defendants' alleged conduct in representing plaintiff with respect to the subpoena she received while at the same time suggesting that she could potentially recover damages against OneTaste in a civil suit is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Plaintiff has not stated a basis for a claim for intentional infliction of emotional distress or negligent infliction of emotional distress, and Counts III and IV of plaintiff's complaint should be dismissed.

**D.    Plaintiff has not Stated a Claim for Violation of Judiciary Law § 487**

As set forth at greater length above, plaintiff does not state a basis under which New York law would apply to this matter where plaintiff is domiciled in Florida and defendants' place of business is in Pennsylvania, particularly given the choice of law provision set forth in plaintiff's retention agreement with defendants.  New York Judiciary Law § 487, is inapplicable to this matter.

Moreover, pursuant to Section 487, an attorney is guilty of a misdemeanor if they are "guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party" or "[w]ilfully delays his client's suit with a view to his own gain. . ."  New York Judiciary Law § 487.  To state a claim under this section, a party must allege sufficient facts demonstrating that the defendant attorneys had the intent to deceive the court or any party.  *Bill Birds, Inc. v. Stein L. Firm, P.C.*, 164 A.D.3d 635, 637, 82 N.Y.S.3d 91, 93 (2018), *aff'd*, 35 N.Y.3d 173, 149 N.E.3d 888 (2020).  The cases where relief has been provided under this section uniformly deal with intentional deceit made to a court or opposing party in litigation such as submitting a false affidavit to generate standing, filing a foreclosure action despite two prior determinations that the mortgage was satisfied, or attorneys listing themselves as creditors despite knowing no money was owed to them.  *See*, *All. Network, LLC v. Sidley Austin LLP*, 43 Misc. 3d 848, 859, 987 N.Y.S.2d 794, 803 (N.Y. Sup. 2014) (reviewing cases where Section 487 claims were sustained).

As the underlying matter was never in suit, there is no basis for a Section 487 claim.  The assertion that defendants delayed "Plaintiffs' matter" is insufficient to state a claim under Section 487 which, at the very least, requires a delay in a "client's suit."

There was no suit.    Plaintiff has not stated a basis for a claim under New York Judiciary Law § 487, and Count V of plaintiff's complaint should be dismissed.

### E.    Unjust Enrichment

Under Pennsylvania law, the elements of unjust enrichment are: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.  *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008) (citing *Limbach Co. LLC v. City of Philadelphia*, 905 A.2d 567, 575 (Pa. Cmwlth. 2006)). A cause of action for unjust enrichment may arise only when a transaction of the parties not otherwise governed by an express contract confers a benefit on the defendant to the plaintiff's detriment without any corresponding exchange of value.  *See, Temple Univ. Hosp. v. Healthcare Mgmt.*, 832 A.2d 501, 507 (Pa. Super. 2003); *Mitchell v. Moore*, 729 A.2d 1200, 1203-04 (Pa. Super. 1999).

It is unclear what plaintiff is alleging other than that defendants received a retainer of $2,500 from plaintiff, pursuant to an engagement agreement, in order for defendants to communicate on her behalf with the FBI to respond to the subpoena she received.  Exhibit "A" at ¶ 48; Exhibit "B."  Defendants received payment for work they did pursuant to a contract with plaintiff.  Plaintiff has not stated a claim for unjust enrichment and Count VI of plaintiff's claim should be dismissed.

### F.    Plaintiff has not Stated a Claim for Breach of Fiduciary Duty

Count VII of plaintiff's complaint purports to state a claim for breach of fiduciary duty.  Plaintiff's breach of duty claim consists of nothing more than a conclusory

allegation that "Defendants created their own conflict of interest and capitalized on the same."

"A breach of fiduciary duty claim must involve disloyalty by the lawyer toward the client in a way which harms the client." *Kinavey v. D'Alessandro*, No. GD11-012624, 2012 Pa. Dist. & Cnty. Dec. LEXIS 3, at *3 (C.P. 2012); *Pitt v. Goldstein*, 2009 Phila. Ct. Com. Pl. LEXIS 124 at *10 (describing damages as "an essential element to a breach of fiduciary duty claim"); *Cambridge Walnut Park, LLC v. Mun. Capital Appreciation Partners I, LP*, 2010 Phila. Ct. Com. Pl. LEXIS 374 at *15 (dismissing breach of fiduciary duty claim due to plaintiff's failure to proffer evidence of harm); *Lamm v. Lenfest*, No. 02232 COMMERCE PROGRAM, 2011 Phila. Ct. Com. Pl. LEXIS 206, at *52 n.62 (C.P. Jan. 22, 2011). A breach of fiduciary duty claim cannot be stated merely by asserting a defendant acted in a negligent manner. *Nkansah v. Kleinbard LLC*, No. CV 19-4472, 2020 WL 920269, at *6 (E.D. Pa. Feb. 26, 2020) ("[Plaintiff's] allegations support no more than an inference that the defendants breached their duty of care, which does not make out a breach of fiduciary duty claim against an attorney.").

Plaintiff does not allege facts to establish disloyalty by defendants. Defendants did not act contrary to the client's professional interest, such as representing a competitor, divulging confidential information, misuse of funds, or usurping a partnership opportunity. Plaintiff's assertion that while representing plaintiff in responding to the subpoena from the FBI, defendants attempted to sign plaintiff up as a client in a potential civil suit does not represent a breach of fiduciary duty.

Plaintiff does not allege facts to establish defendants breached a fiduciary duty. Plaintiff does not allege facts to establish actual loss and a justiciable claim. Plaintiff does not allege facts to establish they experienced actual damages attributable to a

breach of fiduciary duty.  The allegations of the complaint are legally insufficient to establish a cause of action for breach of fiduciary duty against defendants.

### G.    Plaintiff has not Stated a Claim for Breach of Contract

The necessary elements to plead a cause of action for breach of contract are (1) the existence of a contract, (2) a breach of the contract; and, (3) the resultant damages. *Kelly v. Carman Corp.*, 229 A.3d 634, 653 (Pa. Super. 2020).  A party in a breach of contract action is entitled to recover damages that "naturally and ordinarily result from the breach," or "were reasonably foreseeable and within the contemplation of the parties at the they made the contract[.]"  *Ferrer v. Trustees of University of Pa.,* 825 A.2d 591, 610 (2002).

Prior to 1993, the distinction between legal malpractice claims sounding in tort as opposed to those sounding in contract was clearly defined by our courts.  *See*, *Storm v. Golden*, 538 A.2d 61, 65 (Pa. Super. 1988) ("[the] breach of contract count does not allege that appellee failed to follow specific instructions nor that a breach of a specific provision of the contract occurred."); *Duke & Company v. Anderson*, 418 A.2d 613, 616 (Pa. Super. 1980) ("the client has a choice: either to sue the attorney in assumpsit, on the theory that the attorney by failing to follow specific instructions committed a breach of contract; or to sue the attorney in trespass, on the theory that the attorney failed to exercise the standard of care that he was obliged to exercise."); *Hoyer v. Frazee*, 470 A.2d 990, 992 (1984) ("The Hoyers did not allege that the appellees failed to follow specific instructions. . . . [and] did not aver a breach of a specific provision of their contract with appellees. Thus, we do not believe that the first count of the Hoyers' complaint states a true contract cause of action. Rather, the entire complaint sounds in negligence; that is, the appellees failed to exercise the appropriate standard of care.");

*Rogers v. Williams*, 616 A.2d 1031, 1033 (1992). Accordingly, the settled law was that a legal malpractice action sounding in breach of contract could only be maintained when there was an allegation that the attorney failed to follow a specific instruction of the client and could not be based upon generalized allegations of negligence.

After a period of some confusion due to dicta set forth in *Bailey v. Tucker*, 621 A.2d 108 (1993), Pennsylvania courts, using the "Gist of the Action Doctrine" as defined by *Bruno v. Erie Insurance Company*, 106 A.3d 48, 60-68 (Pa. 2014), moved back to the traditional question of whether an executory provision of the contract had been breached to determine whether a claim sounds in negligence or breach of contract. *See*, *See Seidner v. Finkelman*, 2016 Phila. Ct. Com. Pls. LEXIS 378 *aff'd* 195 A.3d 1048, (Pa. Super. 2017) (Gantman, Shogan, and Platt) *petition for allowance of appeal denied* 651 Pa. 262, 204 A.3d 366 (Pa. 2019); *Keystone Custom Homes, Inc. v. Zuke*, 283 A.3d 367, *unpublished memorandum* (Pa. Super. 2022) (Lazarus, Nichols, and McLaughlin); *Nkansah v. Kleinbard LLC*, 2020 U.S. Dist. LEXIS 33094, *9 (E.D. Pa. 2020); *Johnstone v. Raffaele*, 241 A.3d 479, *unpublished memorandum* (Pa. Super. 2020).

The Pennsylvania Superior Court recently clarified what is necessary to assert a viable contract claim. *Swatt v. Nottingham Vill.*, --- A.3d. ----, 2025 PA Super 138, at *24 (July 2, 2025). As the court noted in that opinion, the "gist of the action doctrine" does not "convert" tort claims to contract claims, and that a party may have both a tort claim and a contract claim in the same action, however, in order to maintain a breach of contract claim there must be "specific promises in the Contract, *i.e.*, contractual duties sufficient to maintain breach-of-contract claims." *Id*.

In *Swatt*, the plaintiff alleged that the defendant nursing home breached a specific term of their contract—that the defendant nursing home promised in the

contract, but failed to provide the resident with a "room, meals, housekeeping services, use of walker or wheelchair when medically necessary, nursing care, linen and bedding, and such other personal services as may be required for the health, safety, welfare, good grooming and well-being of" the resident.  *Id.* at *24.  The Superior Court determined that the plaintiff's breach of contract claims were "particular claims. . .that the duties breached were ones created by the parties by the terms of their contract — *i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract — and the claims are to be viewed as ones for breach of contract."  *Id.* (emphasis in original) (quoting *Bruno*, 106 A.3d at 68-69).

The Superior Court further explained that

> After *Bruno*, Pennsylvania courts must review each claim individually to determine whether the plaintiff has alleged or offered sufficient proof (depending on the stage of the proceedings) that the defendant breached the particular duty (tort or contractual) for each particular claim.  If so, the claim proceeds to trial.  Courts should keep in mind that there are instances when a single gist of the action (one unlawful act) breaches both a general duty of care, as well as an expressed or implied contractual duty. While double recovery for the same unlawful act is generally prohibited, multiple claims can proceed to trial, if timely filed.

*Id.* at *25 (emphasis added).

Here, Count VIII asserts nothing more than that "Defendants breached the Retainer Agreement by failing to act and acting to Plaintiff's detriment."  Plaintiff does not identify any specific executory provision of the contract that defendants allegedly breached.

Moreover, the Complaint does not identify how any alleged breach of contract by defendants caused any actual damages.  Defendants were explicitly retained to assist plaintiff in responding to a subpoena from the FBI.  Defendants contacted the FBI on behalf of plaintiff, and plaintiff never had to provide any documents or give a statement

related to the subpoena.  Plaintiff has not stated a claim for breach of contract and

Count VIII of plaintiff's complaint should be dismissed.


### H.    Plaintiff is not Entitled to Prejudgment Interest

In the prayer for relief, plaintiff seeks recovery of, *inter alia*, pre-judgment

interest.  Exhibit "A."  If plaintiff's complaint is not dismissed in its entirety based on the

foregoing, at minimum, the claim for pre-judgment interest should be stricken.

"As a general rule…a successful litigant is entitled to interest beginning only on

the date of the verdict." *Dasher v. Dasher*, 542 A. 2d 164, 164 (Pa. Super. 1988).  Under

Pennsylvania law, the disputed amount must be liquidated at the time of the breach as a

prerequisite for prejudgment interest. *Cresci Const. Servs., Inc. v. Martin*, 2013 PA

Super 66, 64 A.3d 254, 265 (Pa. Super. 2013). If the damages are not liquidated or in a

sum certain, there is no entitlement for prejudgment interest. *Id.*

Here, there are no liquidated amounts in question and plaintiff is not entitled to

prejudgment interest. Plaintiff's claim for interest should be dismissed.


### I.    Plaintiff is not Has not Stated a Claim for Punitive Damages

Punitive damages are exclusively "awarded against a person to punish him for

outrageous conduct." *McClellan v. HMO*, 604 A.2d 1053, 1061 (Pa. Super. 1992)

(citation omitted) ("[A] court may not award punitive damages merely because a tort

has been committed.  Additional evidence must demonstrate willful, malicious, wanton,

reckless or oppressive conduct.").  "Punitive damages are damages … awarded against a

person to punish him for his outrageous conduct and to deter him and others like him

from similar conduct in the future." *Moran v. Corson*, 586 A.2d 416, 422 (Pa. Super.

1991) (citation omitted).  Conduct is "outrageous" when that conduct is grounded in the tortfeasor's "evil motive or his reckless indifference to the rights of others."  *Id.*

As a matter of law, mere negligence and carelessness are insufficient bases upon which to permit an award of punitive damages.  *Phillips v. Cricket Lighters,* 883 A.2d 349 (Pa. 2005).  Punitive damages cannot be established merely by setting forth a claim in negligence and then simply making conclusory allegations that a defendant's conduct was reckless, willful or outrageous.  *McDaniel v. Merck, Sharp and Dohme*, 533 A.2d 436 (Pa. Super. 1987).

After needless hyperbole is removed, the gravamen of plaintiff's complaint is that defendants attempted to engage plaintiff as a client in a potential civil lawsuit against OneTaste, and plaintiff did not want to be a part of that action.  There are no actual facts pled anywhere in the 142 paragraphs of the complaint which could conceivably warrant punitive damages.

## V.    CONCLUSION

Based on the foregoing, defendants Kohn, Swift & Graf, P.C. and Neil L. Glazer respectfully request that this Honorable Court grant their motion to dismiss plaintiff's complaint and that an Order is entered dismissing all claims against defendants.

**MARSHALL DENNEHEY P.C.**

By    _____
Josh J.T. Byrne, Esquire
2000 Market Street, Ste. 2300
Philadelphia, PA 19103
(215) 575-2805
JTByrne@mdwcg.com
Attorney for Defendants

Date:  September 19, 2025

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALISHA PRICE | Case No.: 2:24-cv-05684-GAM |
| v. | Civil Action |
| KOHN, SWIFT & GRAF, P.C. and NEIL L. GLAZER | |

## <u>CERTIFICATE OF SERVICE</u>

I, Josh J. T. Byrne, Esquire, do hereby certify that a true and correct copy of my Brief of Defendants Kohn, Swift & Graf, P.C. and Neil L. Glazer in Support of Motion to Dismiss, was electronically filed with the Court on the date below and is available for viewing and downloading from the ECF System.

**MARSHALL DENNEHEY, P.C.**

BY: _____
Josh J.T. Byrne, Esquire
PA ID No.: 85474
2000 Market Street, Suite 2300
Philadelphia, PA 19103
jtbyrne@mdwcg.com
(215) 575-2805
Attorney for Defendants,
Kohn, Swift & Graf, P.C. and Neil L. Glazer

Date: <u>September 19, 2025</u>