**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALISHA PRICE,<br><br>        Plaintiff,<br><br>        v.<br><br>KOHN, SWIFT & GRAF, P.C. and<br>NEIL L. GLAZER,<br><br>        Defendants. | Case No.: 2:24-cv-05684-GAM<br><br>Civil Action |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS PLAINTIFFS' COMPLAINT**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................3

INTRODUCTION ...........................................................................................................4

LEGAL STANDARD.........................................................................................................4

STATEMENT OF FACTS ...................................................................................................5

ARGUMENT ...................................................................................................................11

      a)  Plaintiff States a Claim for Legal Malpractice (Count I).....................................11

      b)  Plaintiff States a Claim for Fraud ....................................................................13

      c)  Plaintiff's Emotional Distress Claims Are Adequately Pleaded .........................14

      d)  Plaintiff's Judiciary Law § 487 Count Is Viable and Adequately Pleaded ..........18

      e)  Plaintiff States a Claim for Unjust Enrichment ..................................................18

      f)  Plaintiff Has Stated A Claim For Breach Of Fiduciary Duty .............................19

      g)  Plaintiff States a Claim for Breach of Contract ..................................................20

      h)  Punitive Damages and Prejudgment Interest Are Properly Pled ........................21

CONCLUSION...................................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

### CASES

Am. Stores Props., Inc. v Spotts, Stevens & McCoy, Inc., 651 F Supp 2d 349 (ED Pa 2009)..................20

Ashcroft v. Iqbal, 556 U.S. 662 678 (2009)................................................................................4

Bell Atl. Corp. v. Twombly, 550 U.S. 544 555 (2007)....................................................................4

Bennett v Itochu Intl., Inc., 682 F Supp 2d 469 479 (ED Pa 2010) ...............................................13

C.f. Meyer, Darragh, Buckler, Bebenek & Eck v. Law Firm of Malone Middleman, 635 Pa. 427 137 A.3d 1247, 1258 (2016)..........................................................................................................20

Clark v EMC Mtge. Corp., 2009 US Dist LEXIS 61181 ED Pa Jan. 29, 2009, No. 08-CV-1409)......20, 21

Doyle v. Vigilante, 803 Fed. Appx. 628 .....................................................................................12

Fowler v. UPMC Shadyside, 578 F.3d 203 210 (3d Cir. 2009).......................................................4

Greenwald Caterers Inc. v Lancaster Host, LLC, 670 F Supp 3d 187 (ED Pa 2023)............................10

Hackney v. Woodring, 424 Pa. Super. 96, 104, 622 A.2d 286, 289 (1993)......................................17

Heller v Deutsche Bank AG, 2005 US Dist LEXIS 3445 95 A.F.T.R.2d (RIA) 2005-1372 (ED Pa Mar. 3, 2005, No. 04-CV-3571)......................................................................................................20

Hoy v. Angelone, 554 Pa. 134 720 A.2d 745 (1998)...................................................................14

Hutchison v. Luddy, 870 A.2d 766, 770 (Pa. 2005) ....................................................................21

Jordan v City of Phila., 66 F Supp 2d 638 642 (ED Pa 1999) ..........................................14, 15, 16, 17

Juday v. Sadaka, 2019 U.S. Dist. LEXIS 148171.........................................................................12

Kang Haggerty LLC v Hayes, 2023 US Dist LEXIS 21901 (ED Pa Feb. 9, 2023, No. 17-1295).............20

Karpf v Massachusetts Mut. Life Ins. Co., 2018 US Dist LEXIS 33303, at *39 (ED Pa Feb. 28, 2018, No. 10-1401) .............................................................................................................................18

Kazatsky v. King David Memorial Park, 515 Pa. 183, 527 A.2d 988 991 (Pa. 1987)...........................14

Kituske v. Corbman, 714 A.2d 1027 1030 (Pa. 1998)..................................................................11

Lamb v CVS Health, 2022 US Dist LEXIS 31407, at *10 (ED Pa Feb. 18, 2022, No. 21-638)...............13

Nerviano v Contr. Analysis Sys., LLC, 2018 US Dist LEXIS 82253 (ED Pa May 16, 2018, No. 17-4907) ................................................................................................................................................20

Nkansah v. Kleinbard LLC, 2020 U.S. Dist. LEXIS 33094 ............................................................19

Premier Payments Online, Inc. v. Payment Sys. Worldwide, 848 F. Supp. 2d 513, 527 (E.D. Pa. 2012)..19

Rideout v Wells Fargo Bank N.A., 2021 US Dist LEXIS 202872, at *26 (ED Pa Oct. 21, 2021, No. 21-3326)........................................................................................................................17, 18

Rockefeller Ctr. Props. Sec. Litig., 311 F.3d 198 216 (3d Cir. 2002) ...............................................5

Simons v. Royer Cooper Cohen Braunfeld, L.L.C., 587 F. Supp. 3d 209 ..........................................19

Stouch v. Brothers of Order, 836 F. Supp. 1134 1144-1145 (E.D.Pa. 1993).....................................14

Toney v Chester County Hosp., 614 Pa 98 36 A3d 83 (2011)..................................................17, 18

Warriner v. Stanton, 475 F.3d 497 500 (3d Cir. 2007) .................................................................18

Williams v. Guzzardi, 875 F.2d 46 51 (3d Cir. 1989) ..................................................................14

### RULES AND STATUTES

Fed. R. Civ. P. 8(d)(2)............................................................................................................19

Judiciary Law § 487...............................................................................................................18

Pa. R.C.P. 238......................................................................................................................21

Rule 12(b)(6)....................................................................................................................4, 18

Rule 8(a) ...............................................................................................................................5

Rule 9(b) ...............................................................................................................................4

## I.    INTRODUCTION

Plaintiff Alisha Price, submit this Memorandum in Opposition to Defendants', Kohn, Swift & Graf, P.C. ("KSG"), and attorney Neil L. Glazer (collectively, the "Attorney Defendants"), Motion to Dismiss Plaintiffs' Complaint.

Defendants' motion to dismiss should be denied because accepting all the allegations as true – as necessary for a Motion to Dismiss – plaintiff states a valid claim for legal malpractice, fraud, breach of fiduciary duty, and other causes of action. The complaint clearly established that the defendants' vested interest in there being a criminal case and conviction of executives of the company where plaintiff had worked — and whose spiritual philosophy plaintiff practices — created an irreconcilable conflict of interests.

It is clear that defendants prioritized their own financial interests over their client's interests and overt instructions by collaborating with the FBI to groom plaintiff as a witness in a criminal case that would serve as the foundation for lucrative civil litigation that they intended, and still intend, to profit from. These allegations, supported by an uncontroverted declaration by the plaintiff,[1] taken as true for purposes of a motion to dismiss, establish viable claims under Pennsylvania law.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state "plausible grounds" for relief, not merely "labels and conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Court must construe the complaint in the light most favorable to the plaintiff. Fowler v. UPMC Shadyside, 578 F.3d 203,

---

[1] Plaintiff's declaration has been submitted in this action as Document number 8-2 but is submitted again herewith for the clarity of the record as Exhibit B.

210 (3d Cir. 2009). Under Rule 9(b), a plaintiff alleging fraud must state the circumstances with particularity, but this rule is read in harmony with Rule 8(a). In re Rockefeller Ctr. Props. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002).


### III.    STATEMENT OF FACTS


Background and Initial Contact

This action arises from defendants' representation of plaintiff in connection with an FBI investigation into OneTaste.

In April 2021, FBI agents served plaintiff with a subpoena at her mother's home in Florida in connection with the FBI's investigation of OneTaste Incorporated, a California company where plaintiff had previously been employed. (Exhibit A, ¶¶ 43-44;[2] Exhibit B ¶3)[3] When plaintiff told the agents she did not consider herself a victim, they informed her they would contact her again for statements and that she would be arrested, detained, and transported to New York if she did not willingly appear for questioning. (Exhibit A, ¶¶ 45-46; Exhibit B ¶¶5-8).


Retention of Counsel and Initial Misrepresentations

Seeking legal assistance to respond to the subpoena, plaintiff retained defendants in April 2021. Exhibit A, ¶ 47. When plaintiff informed Glazer that another attorney had quoted her $5,000 for a retainer, Glazer immediately offered to take plaintiff's case for a $2,500 "flat fee" retainer. (Exhibit A, ¶ 48; Exhibit B ¶¶9-10). Plaintiff paid the retainer fee and clearly

---

[2] References to Exhibit A are to the Complaint filed in this action at Dkt No. 1
[3] References to Exhibit B are to the Plaintiff declaration filed in this action at Dkt No. 8-2 and resubmitted herewith.

communicated to Glazer that she wanted nothing to do with the OneTaste investigation or the FBI. (Exhibit A, ¶ 49; Exhibit B ¶10). In her first conversation with the defendants, plaintiff expressed that her goal was to end her involvement in the investigation as quickly as possible. (Exhibit A, ¶ 50; Exhibit B ¶¶23, 26).

Defendants' Scheme to Create a "Crime Victim"

Rather than advocating for plaintiff's stated interests, defendants embarked on a scheme to convince plaintiff to participate in the criminal investigation on the basis that she was a "crime victim" for their own financial benefit. (Exhibit A, ¶¶ 20-22). Glazer falsely told plaintiff that when the FBI wants to talk to someone, that person has no choice. (Exhibit A, ¶ 51; Exhibit B ¶¶24, 25). He did not mention any methods of avoiding testimony or quashing the subpoena, he did not advise her of her fifth amendment rights.

He also instructed plaintiff not to speak to anyone about the FBI contacting her, including immediate family members, warning — without foundation — that the FBI would interview anyone she told. (Exhibit A, ¶ 52).

Glazer also attempted to extract information from plaintiff about being a victim of OneTaste. (Exhibit A, ¶ 54; Exhibit B ¶24). Despite plaintiff's clear statements that while the FBI had called her a victim, she did not believe she was a victim of any crime the defendants persisted in their efforts to convince her otherwise. (Exhibit A, ¶¶ 55-56).

Abandonment and Psychological Manipulation

Between May and September 2021, Glazer failed to return plaintiff's multiple calls and emails, leaving her without information about the status of the matter she had retained

defendants to resolve. (Exhibit A, ¶¶ 58-59; Exhibit B ¶32). The psychological toll of the unresolved FBI investigation caused plaintiff immense anxiety and stress, severely compromising her ability to focus and perform her work duties. (Exhibit A, ¶¶ 60-61; Exhibit B ¶30-32). This was compounded by the unnecessary stress caused by Glazer's unfounded advice that plaintiff was not permitted to share the fact of the FBI's visit with anyone else. There was no reason, other than to foster plaintiff's dependence on him and prevent his advice from being questioned.

In September 2021, plaintiff was terminated from her employment as a master stylist and colorist due to depression and anxiety caused directly by Glazer's insistence that she could not avoid cooperating with the government. (Exhibit A, ¶ 62; Exhibit B ¶30). Glazer never advised her that there were options to seek to avoid giving testimony such as quashing the subpoena or pleading her fifth amendment rights. Only after plaintiff informed Glazer that she had been fired did he return her call. (Exhibit A, ¶¶ 63-64; Exhibit B ¶32).

<u>Use of Federal Victim Services for Manipulation</u>

When plaintiff demanded help dealing with the mental health repercussions, Glazer connected her with a federal victim witness specialist, despite plaintiff's previous statements that she was not a crime victim. (Exhibit A, ¶¶ 64-65; Exhibit B ¶34, 35). Glazer assured plaintiff that speaking to the victim specialist would not result in her unwittingly participating in the investigation. (Exhibit A, ¶¶ 67-68). This proved untrue.

The victim specialist told plaintiff she was wrong about the FBI's intrusion causing her distress and claimed that her OneTaste experience was the actual cause. (Exhibit A, ¶ 70; Exhibit B ¶36). The specialist then connected plaintiff with a female federal agent who linked her to an

organization supporting sex trafficking victims. (Exhibit A, ¶ 72; Exhibit B ¶37). Plaintiff immediately recognized this was inappropriate as she was not a victim of sex trafficking. (Exhibit A, ¶¶ 73-74; Exhibit B ¶41).

Defendants did not advise the plaintiff of any other options besides the connection with government officers or employees who tried to bring her deeper into the criminal justice system, the literal opposite of her request as to goals for her legal representation.

Revelation of Financial Motive and Continued Manipulation

In August 2022, Glazer unexpectedly contacted plaintiff to inform her that the FBI requested sworn testimony about her OneTaste experience. (Exhibit A, ¶ 78; Exhibit B ¶45). When plaintiff reiterated that she did not want to be involved, Glazer painted a detailed picture of what participation would entail and assured her not to worry about money for trial representation. (Exhibit A, ¶¶ 79-81; Exhibit B ¶47).

Glazer then revealed the true motive behind defendants' conduct, telling plaintiff that if OneTaste's former owner Nicole Daedone was found guilty, Glazer and his firm could sue OneTaste civilly for damages and "it could be very lucrative for Plaintiff". (Exhibit A, ¶ 83; Exhibit B ¶50).

Despite his former lack of communication, now Glazer continued to call the plaintiff back with proposals, to try to ensure that she continued to participate in the investigation against former OneTaste executives. (Exhibit A, ¶84; Exhibit B ¶50).

During this time Glazer even acknowledged he knew how traumatizing the investigation had been on her, yet insisted she had no option but to go to New York to speak with the FBI. (Exhibit A, ¶ 85).

Glazer then connected plaintiff to yet another federal victims specialist, who advised her to limit written communications as they may become evidence later. (Exhibit A, ¶¶86-87; Exhibit B ¶54). This further exacerbated plaintiff anxiety and drew her away from her life. (Exhibit A, ¶88).

Even the federal victim specials agreed that "this is not right" after the plaintiff informed her that she did not consider herself a victim and mentioned that she had already been in this situation unwillingly for about a year and a half. (Exhibit A, ¶¶89-90).

Ultimately it was the federal victim specialist who informed the plaintiff and Glazer that they did not need to speak with the plaintiff and would cease communications with her since the plaintiff expressed that communicating with them was exacerbating her distress. (Exhibit A, ¶¶91-93; Exhibit B ¶57). The federal victim specialist confirmed, "The FBI and I spoke to [Glazer] and told him we won't push you." (Exhibit A, ¶ 94).

Plaintiff told the federal victim specialist that "[Glazer] did not contact me with any updated info. He's a total disappointment to be honest … He did more to help the DA he did more work to help me. Wouldn't push me and will not contact me are not the same thing. What is the likelihood the FBI will contact me again? Is it a 0% chance? The NYDA?" (Exhibit A, ¶ 97; Exhibit B ¶61).

To this the federal victim specialist confirmed the FBI would no longer be contacting her. (Exhibit A, ¶ 97; Exhibit B ¶62 ).

In short nothing that the defendants did help the plaintiff, their actions only created and exacerbated distress and anxiety as they continually tried to pull the plaintiff further into this investigation and dispute despite her expressly stated goals in her representation. It was only the plaintiff advocating for herself that caused the FBI to back off, something defendants could have

easily done yet refused to due to their interest in perceived self-financial gain through prosecuting OneTaste. Plaintiff only took this step as a last resort when she was at her wits end after suffering immense psychological pressure and anxiety which cause her to lose her only employment.

Termination and Continued Misconduct

On September 13, 2022, plaintiff emailed Glazer to terminate the representation. (Exhibit A, ¶ 99). Glazer did not respond to this termination. (Exhibit A, ¶ 99; Exhibit B ¶63). In June 2023, Glazer emailed plaintiff about the indictment of Nicole Daedone and Rachel Cherwitz without acknowledging plaintiff's prior termination email. (Exhibit A, ¶¶ 99-100; Exhibit B ¶¶64,65).

Plaintiff's suspicions about defendants' true motives were confirmed when she saw an advertisement from KSG soliciting plaintiffs for a potential civil action related to the FBI's OneTaste investigation. (Exhibit A, ¶ 103; Exhibit B ¶66). In June 2024, when plaintiff's counsel requested her complete case file, defendants failed to respond or produce the file in further violation of their legal and ethical duties, (Exhibit A, ¶ 104), no doubt because they were aware that doing so would, and has, frustrated plaintiff's ability to present more evidence at this stage of the complaint.

Damages Suffered

As a direct result of defendants' misconduct, plaintiff suffered the loss of her employment, severe emotional distress, and financial harm. (Exhibit A, ¶¶ 25, 62). Plaintiff went from being a third-party witness seeking simple legal advice to losing her livelihood and being

coerced into meeting with mental health professionals specializing in treating victims of mass shootings. (Exhibit A, ¶ 31).

These facts, accepted as true under the motion to dismiss standard, establish that defendants operated what plaintiff characterizes as a "crime-victims mill for personal profit," prioritizing their anticipated contingency fees over their client's clearly expressed wishes and well-being. Greenwald Caterers Inc. v Lancaster Host, LLC, 670 F Supp 3d 187 (ED Pa 2023); (Exhibit A, ¶ 14).

These factual allegations, taken as true for purposes of the motion to dismiss, demonstrate that plaintiff has alleged sufficient facts to state plausible claims for relief. The complaint contains specific factual allegations regarding defendants' alleged misconduct, the harm caused to plaintiff, and the circumstances surrounding the attorney-client relationship that support plaintiff's various causes of action.

## IV.    ARGUMENT

### a.    Plaintiff States a Claim for Legal Malpractice (Count I)

Under Pennsylvania law, the elements of legal malpractice are: (1) attorney-client relationship; (2) breach of a duty; and (3) proximate causation of actual loss. Kituskie v. Corbman, 714 A.2d 1027, 1030 (Pa. 1998).

First, the attorney-client relationship is undisputed, as evidenced by the engagement agreement dated April 8, 2021, wherein plaintiff retained defendants for $2,500 to provide representation in connection with the OneTaste investigation.

Second, plaintiff has adequately alleged defendants' failure to exercise ordinary skill and knowledge to carry out plaintiff's instructions, instead of breaching fiduciary duties to pursue

their own profit.  The complaint alleges that defendants created conflicts of interest by simultaneously representing plaintiff while pursuing their own financial interests in potential civil litigation against OneTaste (Exhibit A, ¶ 134). Additionally, defendants' alleged failure to produce plaintiff's case file despite repeated requests in June 2024 violates their professional duties.

Third, plaintiff has alleged proximate cause and damages, including loss of employment and litigation expenses incurred to address defendants' conduct (Exhibit A, ¶¶ 61, 73, 107, 108, 114, 118, 123, fn. 5, 131, 135, 136, 142).

The complaint alleges that plaintiff was terminated from her employment as a master stylist and colorist due to depression and anxiety caused by defendants' conduct and the unresolved FBI investigation. (Exhibit A, ¶ 62) While defendants attempt to cast plaintiff's job loss as a result of the FBI contact rather than their negligence, this presents a factual dispute inappropriate for resolution on a motion to dismiss.

Plaintiff's uncontroverted declaration established two occasions a year apart when rather than acknowledge plaintiff's clear instructions, defendant merely ignored her communications and then renewed their efforts to coerce her compliance with their plan to use plaintiff as a pawn in their money-making scheme. (Exhibit B / Dkt 8-2, ¶ 43-45, ¶ 63-64).

Additionally, the "case within a case" requirement cited by defendants applies when a plaintiff must prove they would have prevailed in underlying litigation. Doyle v. Vigilante, 803 Fed. Appx. 628, Juday v. Sadaka, 2019 U.S. Dist. LEXIS 148171. However, this case does not involve failed litigation but rather defendants' alleged failure to properly represent plaintiff's interests in responding to a federal subpoena. Plaintiff retained defendants specifically to minimize her involvement in the FBI investigation, yet defendants allegedly worked to maximize

her participation for their own financial benefit, and in violation of plaintiff's explicit instructions.

Finally, plaintiff also alleges that defendants failed to disclose a conflict of interest to her. While this conflict was not waivable, defendants still failed to have her sign any written conflict waivers regarding their conflict of working with the government and building a lucrative case or cases for themselves. Defendants failure to disclose the conflict also deprived plaintiff of the opportunity to seek conflict free counsel.

The complaint adequately alleges that defendants failed to exercise ordinary skill and knowledge by prioritizing their own interests over their client's expressed wishes to avoid involvement in the investigation. These allegations are sufficient to survive a motion to dismiss.

Plaintiff retained defendants in connection with a federal subpoena. She paid a fee, was directed to cooperate with the FBI despite mental health concerns, and was encouraged to support a criminal and civil case she expressly did not wish to join. The defendants repeatedly lied to plaintiff about common practice in criminal cases, convincing her that (a) she had no other option but to cooperate with the FBI (Exhibit A ¶ 51) and (b) that she was required to stay silent about her traumatic experience being ambushed by the FBI (which the FBI would later admit was improper. (Exhibit A ¶¶ 52-53, 85).

These allegations support a breach of duty and causation of tangible harm, including job loss, reputational injury, and debilitating emotional distress that she was forced to suffer alone and in silence.

In any event, the deposition of defendant Glazer must be taken to establish the level of care the defendants exercised and expert opinion submitted by the parties on that level of care.

     b.  Plaintiff States a Claim for Fraud

To plead fraud with particularity, plaintiffs must identify the "who, what, where, when, and how" of the alleged fraud. <u>Lamb v CVS Health</u>, 2022 US Dist LEXIS 31407, at *10 (ED Pa Feb. 18, 2022, No. 21-638). However, "malice, intent, knowledge and other conditions of a person's mind may be alleged generally." <u>Bennett v Itochu Intl., Inc.</u>, 682 F Supp 2d 469, 479 (ED Pa 2010).

Plaintiff has alleged that defendants made material misrepresentations and omissions by failing to disclose their true intention to use their representation of plaintiff to benefit financially from potential civil litigation against OneTaste (Exhibit A, ¶ 110). The complaint identifies specific conversations in August 2022 where Mr. Glazer allegedly discussed the possibility of plaintiff testifying and participating in a "lucrative civil suit".

These allegations provide sufficient detail regarding the who (defendants), what (misrepresentations about true intentions and acting contrary to plaintiff's instructions), when (during the representation period), where (in the course of the attorney-client relationship), and how (by concealing their financial motivations).

These allegations are sufficient to satisfy Rule 9(b), as they provide defendants with notice of the precise misconduct alleged.

Defendants argue there was no misrepresentation because their website disclosed their practice of representing trafficking victims. However, the alleged fraud is not defendants' general practice area but their specific failure to disclose that they intended to prioritize developing a civil case over plaintiff's expressed desire and instructions to minimize involvement in the investigation. This created a conflict of interest that should have been disclosed and plaintiff. This conflict was irreconcilable and could not have even been waived by the plaintiff unless she expressly changed her goals which she did not and would not have. None the less, Defendants

still failed to educate the plaintiff on the conflict or request that she waive the conflict. Instead, the defendants simply ignored the plaintiff's instruction and attempted to lie and bully her into submission and compliance. By failing to disclose the conflict Defendants also deprived the plaintiff of the opportunity to find conflict-free counsel, as she was not aware, until it was too late, of her need for this.

      c.  <u>Plaintiff's Emotional Distress Claims Are Adequately Pleaded</u>

In <u>Hoy v. Angelone</u>, 554 Pa. 134, 720 A.2d 745 (1998), the Pennsylvania Supreme Court recognized intentional infliction of emotional distress for conduct that is "outrageous and beyond all possible bounds of decency." Thus, To bring an intentional infliction of emotional distress claim, the plaintiff must show that the defendant's (1) extreme and outrageous conduct, (2) intentionally or recklessly, (3) caused, (4) severe emotional distress. <u>Jordan v City of Phila.</u>, 66 F Supp 2d 638, 642 (ED Pa 1999); <u>Kazatsky v. King David Memorial Park</u>, 515 Pa. 183, 527 A.2d 988, 991 (Pa. 1987); <u>Stouch v. Brothers of Order</u>, 836 F. Supp. 1134, 1144-1145 (E.D.Pa. 1993), citing, [**6] inter alia, <u>Williams v. Guzzardi</u>, 875 F.2d 46, 51 (3d Cir. 1989); Restatement (Second) of Torts § 46.

The role of the court is to determine initially if the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. <u>Jordan v City of Phila.</u>, 66 F Supp 2d 638, 642 (ED Pa 1999). If reasonable persons may differ, the issue goes to the jury, subject to the control of the court, to determine whether the conduct is sufficiently extreme and outrageous to incur liability. <u>Id.</u>

Here, plaintiff alleges defendants' conduct was "shocking and repugnant," intentionally coercive, manipulative, aggravated her mental health, and triggered job loss. (Exhibit A ¶116).

When interpreting standards of conduct that is "outrageous and beyond all possible bounds of decency" it is important to take account the sensitive context of defendants' actions with respect to their former client.

Defendants have carved out a new "market niche" for themselves suing organizations with practices that are novel or non-mainstream. That is their prerogative. However, defendants crossed that line when they sought to exploit the private and intimate experiences of their client, particularly her sexual experiences, to generate a profit for themselves.

Acting contrary to a client's instructions for your own financial self-interest is never decent. However, the context in which they did so, in relation to seeking to manipulate the plaintiff's intimate experiences - already the target of so much fear, shame and misunderstanding, - places their conduct squarely in the "shocking and repugnant" and "outrageous" category. Their disregard for how this conduct would impair their client's mental health is unconscionable.

As for intent or recklessness, the word "intent" connotes an actor's desire to cause the consequences of his act, or that he believes that the consequences are substantially certain to occur. Jordan v City of Phila., 66 F Supp 2d 638, 643 (ED Pa 1999), *citing* Restatement (Second) of Torts, § 8A. In contrast, an actor's conduct is considered in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do. He must know or have reason to know of facts which would lead a reasonable person to realize, not only that his conduct creates an unreasonable risk of harm to another, but also that such risk is greater than that which constitutes only negligent conduct. Id.

Here defendants knew the burden the investigation was taking on the plaintiff and continued to embroil her in it unnecessarily. The defendants sought to cajole and manipulate plaintiff to coerce her, against her express wishes, to work with the FBI for the ultimate financial benefit of the defendants, by using her personal, private and consensual sexual experiences for their own profit. When the defendants were not acting with reckless disregard for the instructions from, and wellbeing of, the plaintiff, they were negligently ignoring the plaintiff's communication of her instructions.

The third prong requires that the defendants' conduct cause the emotional distress. Jordan v City of Phila., 66 F Supp 2d 638, 643 (ED Pa 1999). In the context of this prong courts have noted that the extreme and outrageous conduct required for this tort may arise from an actor who is in a position, or a relation with the other, giving him actual or apparent authority over the other, or power to affect his interests. Jordan v City of Phila., 66 F Supp 2d 638, 643 (ED Pa 1999); Restatement (Second) of Torts, § 46, cmt. e.

In particular, defendants preyed on the plaintiff, seeking to exploit the FBI's shaming and mischaracterizing of her personal and private sexual experiences, seeking to profit by preying on a generalized cultural fear and alarm about alternative forms of intimacy and spiritual expression. Defendants committed this manipulation of the plaintiff and her intimate experiences, knowing that this was having a damaging effect on the plaintiff's mental health and financial security, because they were single mindedly driven to profit at plaintiff's expense and against her express instructions.  Furthermore, defendants took advantage of plaintiff's lack of training and experience in the realm of criminal law and plaintiff's trust in their expertise and experience as criminal lawyers. Defendants gave plaintiffs patently incorrect advice, calculated to prolong

rather than end plaintiff's involvement in the criminal matter, banking on plaintiff's compliance due to her lack of experience and expertise.

The fourth prong mandates that the distress be severe. The Restatement addresses the issue of proof of severe emotional distress in comment j to § 46 of the Restatement (Second) of Torts. It states that severe emotional distress may include severe anguish, mental or nervous shock, as well as all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, and nausea. Jordan v City of Phila., 66 F Supp 2d 638, 643 (ED Pa 1999).

In any event, whether severe emotional distress existed is a question of fact to be decided by a jury.  Jordan v City of Phila., 66 F Supp 2d 638, 643 (ED Pa 1999), citing Hackney v. Woodring, 424 Pa. Super. 96, 104, 622 A.2d 286, 289 (1993).

Under a negligent infliction of emotional distress theory of recovery, a plaintiff must allege one of the following four elements: "(1) the defendant had a contractual or fiduciary duty toward [them]; (2) plaintiff suffered from a physical impact; (3) plaintiff was in a 'zone of danger' and at risk of immediate physical injury; or (4) plaintiff had a contemporaneous perception of tortious injury to a close relative. Rideout v Wells Fargo Bank N.A., 2021 US Dist LEXIS 202872, at *26 (ED Pa Oct. 21, 2021, No. 21-3326).

After reviewing legal commentary and decisions from other jurisdictions, in Toney v. Chester County Hospital the Pennsylvania Supreme Court established that justification "exists to extend [negligent infliction of emotional distress] liability to a subset of cases involving preexisting relationships. Toney v Chester County Hosp., 614 Pa 98, 36 A3d 83 (2011).  In so

doing, Courts are to consider the standard elements of negligence claims: duty, breach, causation, and damages. Id. the court limited this liability by qualifying "the reach of this [negligent infliction of emotional distress] claim to preexisting relationships involving duties that obviously and objectively hold the potential of deep emotional harm in the event of a breach." Id.

The court in Toney also found "severe emotional distress can arise equally from situations without any physical impact . . . [and] [a] plaintiff asserting a special relationship [negligent infliction of emotional distress] cause of action absent physical injury, however, must still demonstrate the genuineness of the alleged emotional distress, in part, by proving the element of causation." Id. at 123; Rideout v Wells Fargo Bank N.A., 2021 US Dist LEXIS 202872, at *28-29 (ED Pa Oct. 21, 2021, No. 21-3326).

Here, defendants' conduct foreseeably caused mental anguish and reputational damage, especially when viewed in light of their unique duty as attorneys.

   d.   Plaintiff's Judiciary Law § 487 Count Is Viable and Adequately Pleaded

Defendants erroneously argue that New York law is inapplicable. The Complaint alleges acts connected to New York, including the request that plaintiff travel to New York to support an FBI investigation. Even if Pennsylvania law applies, dismissal under Rule 12(b)(6) is improper because choice of law is a factual inquiry. Karpf v Massachusetts Mut. Life Ins. Co., 2018 US Dist LEXIS 33303, at *39 (ED Pa Feb. 28, 2018, No. 10-1401); Warriner v. Stanton, 475 F.3d 497, 500 (3d Cir. 2007) (quoting Erny v. Estate of Merola, 171 N.J. 86, 792 A.2d 1208, 1221 (N.J. 2002).

   e.   Plaintiff States a Claim for Unjust Enrichment

Although defendants claim a written contract governs, plaintiff is entitled to plead alternative theories at this stage. Fed. R. Civ. P. 8(d)(2); <u>Premier Payments Online, Inc. v. Payment Sys. Worldwide</u>, 848 F. Supp. 2d 513, 527 (E.D. Pa. 2012). The Complaint alleges defendants received payment under false pretenses, and that the services rendered were not for her benefit.

      f.  <u>Plaintiff Has Stated A Claim For Breach Of Fiduciary Duty</u>

Under Pennsylvania law, attorneys owe fiduciary duties to their clients that demand undivided loyalty and prohibit conflicts of interest. <u>Simons v. Royer Cooper Cohen Braunfeld, L.L.C.</u>, 587 F. Supp. 3d 209, <u>Simons v. Royer Cooper Cohen Braunfeld, L.L.C.</u>, 587 F. Supp. 3d 209. A breach of fiduciary duty claim requires demonstrating that defendants negligently or intentionally failed to act in good faith and solely for the client's benefit, resulting in injury. <u>Simons v. Royer Cooper Cohen Braunfeld, L.L.C.</u>, 587 F. Supp. 3d 209, <u>Simons v. Royer Cooper Cohen Braunfeld, L.L.C.</u>, 587 F. Supp. 3d 209.

Plaintiff has adequately alleged that defendants created their own conflict of interest by pursuing their financial interests in litigation again OneTaste while representing plaintiff (Exhibit A, ¶ 134). Courts applying Pennsylvania law interpret breach of fiduciary duty claims in the legal malpractice context as claims for breach of the duty of loyalty, not the duty of care. <u>Nkansah v. Kleinbard LLC</u>, 2020 U.S. Dist. LEXIS 33094. Plaintiff's allegations that defendants prioritized their own financial interests over plaintiff's interests satisfy this standard.

Defendants' argument that the complaint contains only conclusory allegations ignores the specific factual allegations regarding Glazer's statements about lucrative civil litigation and defendants' collaboration with FBI victim services against plaintiff's wishes.

g.   Plaintiff States a Claim for Breach of Contract

Under Pennsylvania law, a breach of contract claim requires: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) damages. Nerviano v Contr. Analysis Sys., LLC, 2018 US Dist LEXIS 82253 (ED Pa May 16, 2018, No. 17-4907); Kang Haggerty LLC v Hayes, 2023 US Dist LEXIS 21901 (ED Pa Feb. 9, 2023, No. 17-1295). Contracts for legal services contain an implied promise to render services in accordance with professional standards. Heller v Deutsche Bank AG, 2005 US Dist LEXIS 3445, 95 A.F.T.R.2d (RIA) 2005-1372 (ED Pa Mar. 3, 2005, No. 04-CV-3571).

Plaintiff alleges defendants breached the retainer agreement by pressuring her to cooperate with third parties and withholding her client file after termination. These allegations identify specific contractual obligations. C.f. Meyer, Darragh, Buckler, Bebenek & Eck v. Law Firm of Malone Middleman, 635 Pa. 427, 137 A.3d 1247, 1258 (2016) (finding no agreement in place between law firms disputing over fees).

Defendants argue that the gist of the action doctrine bars plaintiff's tort claims. However, Pennsylvania courts apply this doctrine to bar tort claims only where they arise solely from a contract, where duties allegedly breached were created and grounded in the contract itself, where liability stems from a contract, or where the tort claim essentially duplicates a breach of contract claim. Am. Stores Props., Inc. v Spotts, Stevens & McCoy, Inc., 651 F Supp 2d 349 (ED Pa 2009);  Clark v EMC Mtge. Corp., 2009 US Dist LEXIS 61181 ED Pa Jan. 29, 2009, No. 08-CV-1409).

Plaintiff's tort claims do not fall within these categories. The alleged fraud and breach of fiduciary duty arise from defendants' failure to disclose conflicts of interest and their

collaboration with the FBI against plaintiff's interests - duties imposed by law rather than by the retention agreement. These claims involve breaches of duties imposed as a matter of social policy, not duties imposed by mutual consensus.

Moreover, while Pennsylvania has not carved out a categorical exception to the gist of the action doctrine for fraud claims, courts recognize that fraud claims often involve duties beyond those created by contract. Clark v EMC Mtge. Corp., 2009 US Dist LEXIS 61181 ED Pa Jan. 29, 2009, No. 08-CV-1409).

      h.  Punitive Damages and Prejudgment Interest Are Properly Pled

Under Pennsylvania law, punitive damages may be awarded where a defendant's conduct is outrageous due to evil motive or reckless indifference. Hutchison v. Luddy, 870 A.2d 766, 770 (Pa. 2005). Plaintiff's allegations are sufficient to support such a claim at the pleading stage. Similarly, the request for prejudgment interest is appropriate under Pa. R.C.P. 238 if damages are later determined to be ascertainable.

CONCLUSION

Based on the foregoing, plaintiff  respectfully request that this Honorable Court deny defendants' motion to dismiss plaintiff's complaint in its entirety.

DATED: October 13, 2025

/s/ Robert J. Hantman
Robert J. Hantman, Esq.
Joseph Ferrara  Esq.
Nyall J. Cook, Esq
**Hantman & Associates**
1120 Avenue of the Americas, 4th Floor
New York, New York 10036
(212) 684-3933
rhantman@hantmanlaw.com
*Attorneys for Plaintiff Alisha Price*

COHN & ASSOCIATES

BY: *Clifford B. Cohn*

CLIFFORD B. COHN, ESQUIRE
1650 Market Street, 55th Floor
Philadelphia, PA  19103
215-545-9660
267-838-9224 (FAX)
CBCOHN@CBCOHN.COM
http://CBCOHN.COM
*Attorneys for Plaintiff Alisha Price*

## CERTIFICATE OF SERVICE

I, Janet Haefner Rogers, legal assistant, hereby certify that I have served upon all parties of record a true and correct copy of the foregoing Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss Plaintiffs' Complaint filed electronically to be viewed and downloaded via ECF_Documents@paed.uscourts.gov to:

> Josh J.T. Byrne, Esquire
> Marshall Dennehey Warner Coleman & Goggin
> 2000 Market Street, Suite 2300
> Philadelphia  PA  19103
> ***Via Email:  jtbyrne@mdwcg.com***

**COHN & ASSOCIATES**

*Janet Haefner Rogers*

Janet Haefner Rogers, legal assistant

1650 Market Street, 55th Floor
Philadelphia  PA  19103
Email:  jhaefner@cbcohn.com
Phone: 215-545-9660
Fax:  267-838-9224

Date:  October 13, 2025