# **EXHIBIT B**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALISHA PRICE, <br><br> Plaintiff, <br><br> v. <br><br> KOHN, SWIFT & GRAF, P.C. and NEIL L. GLAZER, <br><br> Defendants. | Case No. *24-cv-04720 (JMW)* <br><br> **Affidavit of Plaintiff Alisha Price** |

I, Alisha Price, being duly sworn, herby affirm that the following is true and correct under penalty of perjury:

1. I make this declaration upon my personal knowledge.

2. This declaration is provided to (a.) verify the factual allegations made in the Complaint filed in this action, (b.) to explain the circumstances surrounding the execution of the legal retainer agreement between me and the Defendants, and (c.) in general opposition to Defendant Kohn, Swift & Graf, P.C. ("KSG") and attorney Neil L. Glazer's (collectively, the "Attorney Defendants") motion to change the venue of this matter pursuant to F.R.C.P. § 12(b)(3) and/or 28 U.S.C. § 1404.

3. In April 2021, FBI agents came to my mother's home in Florida and served a subpoena issued in connection with the FBI and the United States Attorney's Office for the Eastern District of New York's (the "NYAUSA") investigation of OneTaste Incorporated. ("OneTaste").

4. The subpoena stated I was required to report to a grand jury in New York.

5. I was a former employee at OneTaste and the FBI agents told me that I had two options: I could either speak with them at that moment or would be required to report to a court in New York state in two weeks.

6. The questions I was being asked all related to my former employment with OneTaste during the time when I lived in New York an employee of this company and I assumed since the investigation was based in New York, they must be concerned with my experiences as an employee while living in New York. At that time I was also aware of another action that was settled with Aryies Blanck was filed in New York.

7. My entire frame of reference for the federal investigation was that it was being conducted out of New York and the two agents who flew to Florida to serve me with the subpoena, flew from New York and are based in New York.

8. I tried to resist the New York FBI agents at the time, stating I was no victim, and I was told that if I did not cooperate I would be arrested, detained, and transported to New York if I did not willingly appear for questioning in New York.

9. I immediately began looking for a New York attorney and reached out to Defendant Glazer specifically as he was a lawyer that was licensed to practice in New York.

10. In our short conversation, about 15 minutes or so, Mr. Glazer made an off the cuff offer for the cost of his retainer fee based on halving what I told him I had been quoted by another lawyer.

11. He then sent over a retainer agreement in a very short amount of time after our call and I do not recall him mentioning that he also practiced out of Pennsylvania or that there were any specific stipulations in the retainer agreement about Pennsylvania whatsoever.

12. He downplayed the details of the entire retainer agreement.

13. When I hired the Attorney defendants they did not explain the retainer agreement in any detail and did not explain or even mention the so-called forum selection clause to me.

14. I did not have the opportunity for an independent attorney to review the retainer agreement.

15. In my mind the entirety of this matter was revolving around New York.

16. Having had no experience with agreements of this sort I did not at all notice anything specifically relating to Pennsylvania.

17. As explained herein, during his representation, all of my conversations with Mr. Glazer focused on federal agents and state attorneys

operating out of New York, as well as two federal victim specialists operating out of New York, my time living in New York, the investigation being led out of New York, the Eastern district of new York, and two related cases in New York, the fact that I was being asked to travel to New York to speak in front of a grand jury, and then later asked to travel to New York to give deposition as a victim witness in this New York investigation.

18. I had and have absolutely no frame of reference at all for Pennsylvania being relevant or related to my dealings with the FBI, the EDNY, my subpoena or the investigation and now related indictment and civil case.

19. Upon reviewing my case file received from Mr. Glazer all of his communications were with Eastern District of New York States Attorneys and FBI based out of New York.

20. Mr. Glazer did not explain the clause in the retainer agreement which mentioned Pennsylvania and did not recommend I seek advice from an independent attorney regarding the retainer.

21. Every conversation we ever had was in regard to people or proposed events which were in New York.

22. The suit I have filed against Mr. Glazer and his firm should clearly be tried in New York, not in Pennsylvania.

23. Even before signing the retainer and retaining the Attorney Defendant I made very clear to the Defendants, and specifically to Mr. Glazer, that my main priority was to end all involvement with the matter and that I was in no way a victim of OneTaste.

24. Glazer advised me I had no choice but to speak with the FBI and the NYAUSA, Glazer himself also tried to extract information from me regarding my 'victimhood' at the hands of OneTaste.

25. When Glazer and his legal assistant interviewed the me by phone I was scared and was trying to walk a line of cooperating with the FBI because I thought I had no choice and might get charged if I did not,

26. I was also trying to cooperate with Glazer so that he would help me with my request to not participate in the investigation or any possible trial in the future, yet I made it clear that I did not believe I was a victim of a crime.

27. I was anxious to have the matter with the FBI and the NYAUSA resolved but Glazer didn't provide any information regarding that.

28. The FBI investigation was all regarding a criminal action brought in this court, the Eastern District of New York, against OneTaste former owner and other OneTaste associates, entitled United States v. Nicole Daedone Criminal Docket No. 23-146 (DG) (the "Criminal Action")

29. I believe Glazer communicated primarily with Gillian Kassner, Assistant United States Attorney, United States Attorney's OfficeEastern District of New York regarding the investigation.

30. The stress from the investigation and lack of care from Defendants caused me to lose my job as a master stylist and colorist.

31. After being fired I had an emotional breakdown and reached out to Glazer.

32. Only after I told him that I had been fired from my job did Glazer return my call.

33. When we spoke, I told Glazer that if I had to participate in the investigation then he had to get me help to deal with the enormous repercussions it was having on my mental health and her livelihood.

34. Glazer put me in contact with a victim witness specialist, who was located in New York.

35. Speaking with this victim specialist only added to my anxiety and distress.

36. When I told him that the FBI's unwelcome intrusion into my life was causing her great distress, he told me I was wrong and that the conduct I had experienced at OneTaste was the cause of my distress.

37. He then put me in contact with a female federal agent who in turn connected me with an organization that supported sex trafficking victims.

6

38. I believe this agent was also located in New York.

39. In desperate need of help to deal with the anxiety of involuntarily being involved in the FBI investigation, I contacted the organization.

40. I believe this organization was also based in New York.

41. Upon speaking to the receptionist however, I immediately knew this facility would be of no use to me because they were approaching me as if she was a victim of sex trafficking, which I knew was not true.

42. I told the organization that I did not need their services as I was not the victim of a crime.

43. In September 2021, I told both the victim witness specialist and Glazer that I wanted to resolve the matter and did not want to be involved.

44. I continually maintained that I was not a victim and did not want to be involved.

45. Glazer again began to refuse or ignore my calls and about a year later in or about August 2022, Glazer contacted me unexpectedly and informed me that the FBI requested that I travel to New York City to give sworn testimony about her OneTaste experience.

46. I again expressed that I did not want to participate.

47. Rather than address my concerns, Glazer proceeded to paint a detailed picture of what it would look like for me to travel to New York to give testimony and potentially participate in a trial.

48. Glazer insisted on telling me how he was going to take care of me in New York and ensure I had whatever food I wanted while I was there.

49. When I expressed concern about not being able to pay Glazer to represent me should I have to participate in a trial, Glazer told the Plaintiff to not worry about the money.

50. Glazer told me that if OneTaste's former owner, Nicole Daedone, is found guilty as a result of the criminal investigation, Glazer and his firm could sue OneTaste civilly for damages and it could be very lucrative for me personally.

51. After this conversation, Glazer called me back with proposals, to try to ensure that I continued to participate in the investigation against former OneTaste executives.

52. I was told that I would need to travel to New York City to give a deposition, and Glazer explained what a deposition was.

53. After the explanation I again made clear I did not want to participate.

54. Ever persistent toward his goal of building a case agaisnt OneTaste, Glazer put me in contract with another federal victim specialist with, Angela Jackson, "Victim Specialist Two."

55. Angela Jackson, Victim Specialist Two was also from "FBI New York" as seen in her email signature.

56. On a phone call around this time I communicated to Victim Specialist Two that I did not consider myself a victim and mentioned that I had already been in this situation unwillingly for about a year and a half.

57. On September 12, 2022, Victim Specialist Two texted the me, "*Hi Alicia I apologize for just responding but I was out of town. Based on your last emails we were under the impression that you did not want to speak to us; which we told your you[r] attorney we would respect. I don't want to upset by this message but I didn't want you to think I was ignoring you. We won't reach out to in the future to respect your boundaries but if you need assistance from me or decide you would like to talk don't hesitate to reach out.*"

58. I responded to Victim Specialist Two's text messages to ask whether Victim Specialist Two was speaking for the FBI, the US Attorneys Office Eastern District or just victim services. Victim Specialist Two said, "*The FBI and I spoke to [Glazer] and told him we won't push you.*"

59. I responded to Victim Specialist Two by advising that Glazer did not contact me with any updated information.

60. I said she believed that Glazer did more to help the FBI than to help me and informed the specialist that not "pushing me" is not the same thing as not contacting me, as she had requested.

9

61. I then asked Victim Specialist Two to confirm that there was a 0% chance the FBI would contact her again. with the following message, *"Neil did not contact me with any updated info. He's a total disappointment to be honest ... He did more to help the DA he did more work to help me. Wouldn't push me and will not contact me are not the same thing. What is the likelihood the FBI will contact me again? Is it a 0% chance? The NYDA?"*

62. Victim Specialist Two responded to Plaintiff by texting, *"no you will not be hearing from us. I have zero idea about the nyda as that is a separate office."*

63. On September 13, 2022, I emailed Glazer to terminate the representation, which Glazer did not respond to.

64. In June 2023, Glazer emailed me informing me about the indictment of Nicole Daedone and Rachel Cherwitz.

65. Glazer did not acknowledge my prior email terminating his engagement.

66. Shortly thereafter, I saw an advertisement from KSG soliciting plaintiffs for a potential civil action related to the FBI's investigation of OneTaste, Nicole Daedone and Rachel Cherwitz,

67. This confirmed my belief that the reason the Attorney Defendants had refused to help me resolve the matter I had retained them to help me with was because they did not want to jeopardize an indictment not being filed, because they sought to financially benefit from the indictment by filing a civil suit, entitled Doe et al v. Daedone et al - 1:24-cv-04434. (the "Civil Action")

10

68. I was not a plaintiff in this Civil Action.

69. All of the information relevant to the defendants misconduct and their support of the New York Attorney's office and the FBI working out of New York, all of the victim specialists I spoke to and repeated my discontent with the Attorney Defendants, were located in New York.

70. The two relevant cases the Criminal Action and the Civil Action are both pending in this court, the Eastern District of New York.

71. For these reasons I request this court retain this case and allow me to proceed pursing my rights here where I can adequately conduct third party discovery.

72. This jurisdiction also has a personal interest in this case as it involves the actions of not only the Attorney Defendants, but also states attorneys and FBI agents acting in this jurisdiction.

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on September _____ 2024

_____ (Signature)