IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALISHA PRICE<br><br>v.<br><br>KOHN, SWIFT & GRAF, P.C. and NEIL L. GLAZER | Case No.: 2:24-cv-05684-GAM<br><br>Civil Action |

**REPLY BRIEF OF DEFENDANTS KOHN, SWIFT & GRAF, P.C.
AND NEIL L. GLAZER IN SUPPORT OF MOTION TO DISMISS**

Defendants, Kohn, Swift & Graf, P.C. and Neil L. Glazer ("defendants"), by and through counsel, Marshall Dennehey, P.C., reply in support of their motion to dismiss plaintiff's complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). As set forth below and more fully in the motion to dismiss, there is no factual or legal basis for any of the claims asserted in the complaint.

**I.      Factual Background and Procedural History**

Defendants incorporate by reference the factual background and procedural history set forth in their opening brief, Doc. 28 at ECF 2 through 8, as if set forth fully herein.

**II.     Argument**

    **A.      Plaintiff has not stated a claim for legal malpractice**

Count I of plaintiff's complaint purports to assert a claim of legal malpractice (professional negligence), but only asserts conclusory allegations that defendants did not exercise ordinary skill and knowledge, and that she would "have had a better result in the underlying matter for which she had retained [defendants] but for [defendants'] negligence." Exhibit "A" at

1

¶¶ 106-107.  However, plaintiff fails to show a breach of the applicable standard of care and to demonstrate any actual loss.

With respect to an alleged breach of the applicable standard of care, in her response to defendants' motion to dismiss ("Response"), plaintiff maintains that she "adequately alleged defendants' failure to exercise ordinary skill and knowledge to carry out [her] instructions, instead of breaching fiduciary duties to pursue their own profit."  Doc. 31 at ECF 11-12.  Plaintiff also asserts the complaint "alleges that defendants failed to disclose a conflict of interest to her" and this "deprived plaintiff of the opportunity to seek conflict free counsel."  Doc. 31 at ECF 13.

Plaintiff does not identify the "instructions" defendants allegedly did not carry out, but refers to "two occasions a year apart when rather than acknowledge plaintiff's clear instructions, defendant merely ignored her communications and then renewed their efforts to coerce her compliance with their plan to use plaintiff as a pawn in their money-making scheme."  Doc. 31 at ECF 12.  Plaintiff refers to ¶¶ 43-45 and 63-64 of an alleged "affidavit" of Ms. Price in support of this contention.  Doc. 31-2 (Exhibit B).  Defendants first note that this "affidavit" is neither dated nor signed by Ms. Price, there is certainly no notarization as one would traditionally expect with an affidavit.  Moreover, the assertions in this affidavit are no different from the allegations of the complaint.  The assertion in paragraph 43-45 is that plaintiff told defendants she "wanted to resolve the matter," but that defendants then contacted her and informed her "that the FBI requested that I travel to New York City to give sworn testimony about her (*sic*) OneTaste experience."  Doc. 31-2 at ¶¶ 43-45.  The assertion in paragraphs 63-64 of the unsigned "affidavit" is that on September 13, 2022, plaintiff emailed defendants to terminate representation, and defendants subsequently emailed plaintiff "informing me about the

indictment of Nicole Daedone and Rachel Cherwitz." Doc. 31-2 at ¶¶ 63-64. Neither of these statements comes close to describing a breach of the standard of care.

Rather than breaching the standard of care, plaintiff's response, like the complaint itself, is largely focused on a claim that defendants put their own financial interests ahead of plaintiff. An apparent attempt to assert a breach of fiduciary duty. However, it is well-established that "[c]ourts applying Pennsylvania law interpret a claim for breach of fiduciary duty in the context of legal malpractice as a claim for breach of the duty of loyalty, not the duty of care." *Nkansah v. Kleinbard LLC*, No. CV 19-4472, 2020 WL 920269, at *6 (E.D. Pa. Feb. 26, 2020). An alleged breach of a fiduciary duty is insufficient to state a claim of professional negligence. *Id*. Similarly the argument that "defendants failed to disclose a conflict of interest," would not establish a claim for professional negligence, even if plaintiff had identified what the alleged conflict was.

Plaintiff also asserts that the alleged failure of defendants to produce the client file in June 2024, "violates their professional duties." Defendants do not identify what "professional duties" were allegedly violated, but this is not a claim of a breach of the standard of care which caused harm during the representation. Although plaintiff does not cite any law in support of this contention, presumably plaintiff is referring to the duty under the Rules of Professional Conduct owed to former clients. However, the law is clear that in Pennsylvania, a violation of a Rule of Professional Conduct does not give rise to a claim for legal malpractice. *Maritrans GP, Inc. v. Pepper Hamilton & Scheetz*, 602 A.2d 1277, 1284 (Pa. 1992) (holding that a lawyer's conduct is not "actionable" simply because it "may violate the rules of ethics"); *see also* the "scope" note to the Rules of Professional Conduct (providing that "[v]iolation of a Rule should

3

not itself give rise to a cause of action nor should it create any presumption…that a legal duty has been breached"; and that the Rules "are not designed to be a basis for civil liability").

Plaintiff's argument conflates negligence and breach of fiduciary duty, and fails to address how defendants breached their duty of care. Plaintiff has not identified a breach of the duty of care. Instead, plaintiff asserts defendants did not respond when plaintiff told them she did not want to be involved in testifying, and did not provide her with a copy of her file.[1]

Plaintiff appears to misunderstand defendants' argument in the motion to dismiss regarding damages. Plaintiff maintains that the "case within a case" requirement for proving actual injury:

> applies when a plaintiff must prove they would have prevailed in underlying litigation. Doyle v. Vigilante, 803 Fed. Appx. 628, Juday v. Sadaka, 2019 U.S. Dist. LEXIS 148171. However, this case does not involve failed litigation but rather defendants' alleged failure to properly represent plaintiff's interests in responding to a federal subpoena.

ECF 31 at 12. Defendants' argument on the motion to dismiss is not that plaintiff is required to establish she would have "won" the underlying litigation, but that plaintiff cannot establish the existence of "actual loss." As set forth more fully in defendants' opening brief,

> To prove actual injury, plaintiffs must prove that the underlying legal representation would have achieved whatever the plaintiffs hoped to achieve. While this analysis is tailored to the particular context of the facts underlying the basis for the legal malpractice claim, ***in all cases a plaintiff must prove "actual loss***," meaning that if the underlying action, be it a case, transaction or patent prosecution, would have failed regardless of the defendant's professional negligence, then the plaintiffs have not suffered actual loss.

---

[1] Defendants note that plaintiff's file was produced to a subsequent counsel other than plaintiff's current counsel, but do not base their motion to dismiss on this contested fact.

4

*FCS Cap. LLC v. Thomas*, 579 F. Supp. 3d 635, 649 (E.D. Pa. 2022) (emphasis added). That is, plaintiff must, at a bare minimum identify an objective of the representation that was not met as a result of the alleged breach of duty. Plaintiff has not done so here.

      Plaintiff has not identified an objective of the representation that was not met as a result of the alleged breach of duty. Plaintiff asserts she "retained Defendants to represent her in connection with responding to the subpoena" from the FBI to provide information regarding OneTaste. Exhibit "A" at ¶ 19, 47. Specifically, she maintains that defendants failed to "minimize her involvement" in the investigation, and elsewhere in her Response, asserts that Defendant Glazer "never advised her that there were options to seek to avoid giving testimony such as quashing the subpoena or pleading her fifth amendment rights." Doc. 31 at ECF 7, 12. However, plaintiff's complaint does not allege any facts that even begin to suggest that the subpoena was improper or unwarranted, or that there was any reasonable basis for her to oppose the subpoena. Furthermore, the facts alleged in the complaint do not suggest that plaintiff either responded to the subpoena, or suffered any consequences for not responding to the subpoena. Plaintiff does not assert what better result could have been achieved in the representation than than not having to either make a statement or to produce documents. Accordingly, plaintiff has not identified any actions by defendants which breached the standard of care, or established that another course of action which would have led to a better outcome. There is nothing whatsoever in the complaint to suggest that plaintiff had any "litigation expenses" other than the $2,500 fee paid to defendants.

      Because she has not identified a breach of the applicable standard of care, and has demonstrated no actual loss, plaintiff cannot maintain a claim for professional liability/ legal

malpractice. Accordingly, defendants' motion to dismiss plaintiff's negligence claim should be granted.

### B.  Plaintiff has not Stated a Claim for Fraud

As set forth in defendants' motion to dismiss, the factual basis for a fraud claim is completely missing in this matter. In her Response, plaintiff asserts the "fraud" arises from defendants' "specific failure to disclose" their priority of developing a civil case which would benefit them financially. Doc. 31 at ECF 14. However, plaintiff's allegation that defendants made a fraudulent misrepresentation regarding their intent is illogical on its face. In her Response, plaintiff notes that, in the complaint, she "alleged that defendants made material misrepresentations and omissions by failing to disclose their true intention to use their representation of plaintiff to benefit financially from potential civil litigation against OneTaste" but in the next sentence, she explained that she "identifie[d] specific conversations in August 2022 where Mr. Glazer allegedly discussed the possibility of plaintiff testifying and participating in a 'lucrative civil suit'." *Id*. at ECF 14. Accordingly, plaintiff's own assertions belie her allegation that defendants made any misrepresentation whatsoever.

Furthermore, plaintiff also maintains that defendants failed to educate her on the conflict between her interests and theirs, which deprived her of the opportunity to obtain conflict-free counsel because she was not aware of the conflict "until it was too late." *Id*. at ECF 15. It is unclear to what this hyperbolic claim refers, but as set forth throughout defendants' opening brief, plaintiff did not suffer any injury that was proximately caused by reliance on any representation by defendants. *See Gruenwald v. Advanced Computer*, 730 A.2d 1004, 1014 (Pa. Super. 1999) (setting forth elements of fraud, including that "the resulting injury was proximately caused by the reliance.").

6

It is telling that one of the two cases plaintiff cites to in this section is *Lamb v. CVS Health*, No. CV 21-638, 2022 WL 541611, at *3 (E.D. Pa. Feb. 23, 2022), where the court dismissed plaintiff's fraud claim due to the lack of specificity in the claim. As the court held in *Lamb*, "without any specificity as to alleged fraudulent allegations, Plaintiff fails to meet the heightened pleadings standard for fraud claims. Accordingly, Defendant's motion to dismiss Plaintiff's allegation of fraud must be granted." *Id.* In granting the defendant's motion to dismiss the fraud claim, the *Lamb* court stated: "Plaintiff still fails to state with particularity how Defendant's responses constitute any misrepresentation or what damages actually resulted from Plaintiff's inaction." *Id*. This is exactly the failing in plaintiff's complaint in the present action.

Accordingly, for the reasons set forth more fully in defendants' opening brief, plaintiff has failed to state a claim for fraud, and Count II of plaintiff's complaint should be dismissed.

> **C.    Plaintiff has not Stated a Claim for Intentional or Negligent Infliction of Emotional Distress**

As plaintiff's response to defendants' motion to dismiss acknowledges, claims for intentional infliction of emotional distress in Pennsylvania require, at a minimum, a showing of conduct that is "outrageous and beyond all possible bounds of decency."  Doc. 31 at ECF 15. Plaintiff is also correct that this court in the first instance has a "gate keeping" function to "determine initially if the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Jordan v. City of Philadelphia*, 66 F. Supp. 2d 638, 642 (E.D. Pa. 1999). Here, the court, exercising that function, should dismiss the emotional distress claim.

Plaintiff's cite to the *Jordan* case is instructive. In *Jordan*, the plaintiffs were placed in a foster home by defendants when the defendants allegedly knew, or should have known, that one of the family members was "on a child abuse listing," and that defendants "were verbally notified by the plaintiffs as to the sexual abuse." *Id.* In *Jordan*, the court stated: "To bring an

7

intentional infliction of emotional distress claim, the plaintiff must show that the defendant's (1) extreme and outrageous conduct, (2) intentionally or recklessly, (3) caused, (4) severe emotional distress." *Id*. The court in that matter carefully went through the four prongs listed by plaintiff in the response and found that the complaint included factual allegations that supported each one of the prongs.

Here, plaintiff has not asserted facts in the complaint which would support any of the prongs set forth in *Jordan*. As an initial matter: "To satisfy the first element of the four-prong test, the conduct must be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency as to be regarded as atrocious and utterly intolerable in a civilized community." *Id*. There is no basis for a contention that defendants' alleged conduct in representing plaintiff with respect to the subpoena she received, while at the same time suggesting that she could potentially recover damages against OneTaste in a civil suit, is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." There is simply nothing outrageous about an attorney informing a client that they have the potential to succeed in a civil lawsuit against a former employer.

The second prong requires:

> Second, the plaintiffs carry the burden of proving that the defendants' conduct was intentional or reckless. The word "intent" connotes an actor's desire to cause the consequences of his act, or that he believes that the consequences are substantially certain to occur. Restatement (Second) of Torts, § 8A. In contrast, an actor's conduct is considered in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do. He must know or have reason to know of facts which would lead a reasonable person to realize, not only that his conduct creates an unreasonable risk of harm to another, but also that such risk is greater than that which constitutes only negligent conduct. Restatement (Second) of Torts, § 500.

8

*Id.* Again, even taking all of plaintiff's allegations as true, the assertion to plaintiff that she could be part of a civil lawsuit against OneTaste is certainly not the type of conduct that a finder of fact could determine was intentional or reckless when it comes to the infliction of emotional distress.

"The third prong requires that the defendants' conduct cause the emotional distress." *Jordan*, *supra*. As noted in the motion to dismiss, the actual cause of plaintiff's alleged emotional distress appears to be the FBI's subpoena itself, rather than any action or inaction by defendants.

The final prong, the alleged severity of the emotional distress, is put into stark relief by the court finding in *Jordan*:

> In the case at hand, plaintiffs aver that the repeated instances of sexual abuse committed upon them has resulted in extreme emotional distress and psychological damages. Plaintiffs' factual allegations, if presumed true, do substantiate a claim of severe emotional distress. Specifically, the symptoms include nightmares and inability to sleep, anxiety attacks, and occasional fear of male contact and figures of authority. One of the plaintiffs, Nickie Jordan, asserts that due to the denial of her requests for abortions, she incurred the extensive additional cost of delivering two babies.

*Jordan v. City of Philadelphia*, 66 F. Supp. 2d 638, 643 (E.D. Pa. 1999). The court in *Jordan*, reasonably found that this presented a *prima facie* case for intentional infliction of emotional distress. There is nothing in the present action that is even remotely similar.

With respect to negligent infliction of emotional distress, plaintiff relies heavily on *Toney v. Chester Cnty. Hosp.*, 614 Pa. 98, 100, 36 A.3d 83, 84 (2011), where a plurality of the Pennsylvania Supreme Court held: "As more fully defined below, we would hold that NIED is not available in garden-variety 'breach of contractual or fiduciary duty' cases, but only in those cases where there exists a special relationship where it is foreseeable that a breach of the relevant duty would result in emotional harm so extreme that a reasonable person should not be expected to endure the resulting distress." As the court in *Rideout v. Wells Fargo Bank N.A.*, No. CV 21-

3326, 2021 WL 4902344, at *11 (E.D. Pa. Oct. 21, 2021), another case relied upon by plaintiff noted: "The Pennsylvania Supreme Court in *Toney* issued an evenly-split plurality decision affirming the superior court's finding the plaintiff can state a claim for negligent infliction of emotional distress under a 'special relationship' theory; thus, while persuasive, Toney is not binding." *Id*.  On allocatur, the Supreme Court was evenly divided, accordingly, the Superior Court decision was affirmed, and the Supreme Court opinion has no precedential value. *Hershman v. Muhlenberg Coll*., 17 F. Supp. 3d 454, 459 (E.D. Pa. 2014).

The basis for the court's decision in *Toney*, related to the plaintiff's emotional distress at seeing her son born with severe abnormalities after being told that the results of an ultrasound were normal:

> Defendants, either directly or vicariously, performed a pelvic ultrasound study on Plaintiff Jeanelle Antionette Toney and her unborn child on March 3, 2003. Defendants interpreted and reported the results to Plaintiff as normal. On July 3, 2003, however, Plaintiff gave birth to her son who had several profound physical abnormalities. Plaintiff, who was conscious during the birth, alleges that Defendants' negligent misinterpretation of the March 2003 ultrasound prevented her from preparing herself for the shock of witnessing her son's birth with such substantial physical deformities.

*Toney, supra*.  While the plurality of the Court in *Toney* did determine that no actual physical impact was required, it specifically noted:

> A plaintiff asserting a special relationship NIED cause of action absent physical injury, however, must still demonstrate the genuineness of the alleged emotional distress, in part, by proving the element of causation. Unlike cases involving a physical impact, a plaintiff in a non-impact case faces a more difficult task of convincing a court of the legitimacy of the emotional distress and the causal nexus between the negligent action at issue and alleged distress. Indeed, we can foresee cases where a trial judge may determine that no jury could reasonably differ as to whether the plaintiff has sufficiently established a causal link. In such cases, our trial courts are charged with performing their standard gatekeeping function in determining which cases should be permitted to be argued to a jury.

*Id*.

The alleged conduct in the present matter does not approach that asserted in *Toney*, or in other claims where an action for an NIED has been permitted to proceed due to a "special relationship." Plaintiff cites to no case which is even remotely similar to the present action where a court has permitted a "special relationship" NIED cause of action against an attorney. Plaintiff has failed to state a claim for infliction of emotional distress, either negligent or intentional and those claims should be dismissed from plaintiff's complaint.

### D.    Plaintiff has not Stated a Claim for Violation of Judiciary Law § 487

Count V of plaintiff's complaint asserts a violation of New York Judiciary Law § 487. However, plaintiff has not addressed defendants' argument in the motion to dismiss that the underlying matter was never in suit, and thus, there is no basis for a Section 487 claim, regardless of the applicability of New York law.[2] Quite simply, § 487 can only apply when a claim is in suit. There is no allegation that defendants attempted to deceive a court or an other party with involvement in the representation. Plaintiff's response completely fails to address this.

Furthermore, plaintiff fails to assert any basis for the application of New York law in this matter. Specifically, she asserts that "[t]he Complaint alleges acts connected to New York, including the request that plaintiff travel to New York to support an FBI investigation." Doc. 31 at ECF 19. In the alternative, she maintains that, "[e]ven if Pennsylvania law applies, dismissal under Rule 12(b)(6) is improper because choice of law is a factual inquiry." *Id.* (*citing Karpf v Massachusetts Mut. Life Ins. Co.*, 2018 WL 1142189, 2018 US Dist LEXIS 33303, at *39 (E.D.

---

[2] As set forth in defendants' motion to dismiss, an attorney is guilty of a misdemeanor if they are "guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party" or "[w]ilfully delays his client's suit with a view to his own gain. . ." New York Judiciary Law § 487. To state a claim under Section 487, a party must allege sufficient facts demonstrating that the defendant attorneys had the intent to deceive the court or any party. *Bill Birds, Inc. v. Stein L. Firm, P.C.*, 164 A.D.3d 635, 637, 82 N.Y.S.3d 91, 93 (2018), *aff'd*, 35 N.Y.3d 173, 149 N.E.3d 888 (2020).

11

Pa 2018); *Warriner v. Stanton*, 475 F.3d 497, 500 (3d Cir. 2007) (quoting *Erny v. Estate of Merola*, 171 N.J. 86, 792 A.2d 1208, 1221 N.J. 2002)).

None of the cases cited by plaintiff preclude the Court from deciding whether New York law applies at the motion to dismiss stage.[3] Furthermore, there are no questions of fact here. Plaintiff is domiciled in Florida and defendants' place of business is in Pennsylvania. Plaintiff was never actually required to go to New York pursuant to the subpoena, and she does not assert that any other material facts took place in New York. Finally, the choice of law provision, set forth in plaintiff's retention agreement with defendants, provides that the engagement agreement "shall be governed by the laws of Pennsylvania, regardless of the place of execution or performance." As set forth in the motion to dismiss: "Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." Exhibit "C;" *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994). Plaintiff has not stated a basis for a claim under New York Judiciary Law § 487, and Count V of plaintiff's complaint should be dismissed.

### E. Plaintiff has not Stated a Claim for Unjust Enrichment

In Count VI of her complaint, plaintiff purports to assert a claim of unjust enrichment, despite the fact that there exists an engagement agreement between plaintiff and defendants.[4] In her Response, plaintiff asserts that "[a]lthough defendants claim a written contract governs, plaintiff is entitled to plead alternative theories at this stage." Doc. 31 at ECF 20, citing F.R.C.P.

---

[3] For example, while the Third Circuit in *Warriner* described the test used in New Jersey to determine choice of law (government interest analysis) as "fact intensive", it ultimately affirmed the grant of summary judgment based on the choice of law analysis as to which state's statute of limitations applied. 475 F.3d at 500, 506.

[4] A cause of action for unjust enrichment arises only when the parties' transaction is not otherwise governed by an express contract and it confers a benefit on the defendant to the plaintiff's detriment without any corresponding exchange of value. *See, e.g. Temple Univ. Hosp. v. Healthcare Mgmt.*, 832 A.2d 501, 507 (Pa. Super. 2003).

12

8(d)(2); *Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F. Supp. 2d 513, 527 (E.D. Pa. 2012). While it is true that Rule 8(d)(2) generally permits plaintiffs to plead theories in the alternative, the very case plaintiff cites, *Premier Payments Online, Inc.*, states that a "plaintiff is permitted to plead alternative theories of recovery based on breach of contract and unjust enrichment in cases where there is a 'question as to the validity of the contract in question.'" 848 F. Supp. 2d at 527. Here, plaintiff does not challenge the validity of the engagement agreement, rather she relies on the agreement to make her claim and thus, she cannot state a claim for unjust enrichment.

Furthermore, plaintiff maintains that defendants "received payment under false pretenses," and that the services they provided were "not for [plaintiff's] benefit." Doc. 31 at ECF 20. Under Pennsylvania law, "the elements of unjust enrichment are: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008) (citation omitted)). Here, plaintiff's complaint fails to establish "that it would be inequitable for defendant to retain the benefit without payment of value." *Id*. Defendants received a retainer from plaintiff, pursuant to an engagement agreement, in order for defendants to communicate on her behalf with the FBI to respond to the subpoena. Exhibit "A" at ¶ 48; Exhibit "B." Defendants received payment for work done pursuant to a contract with plaintiff. Plaintiff was never required to appear or produce any documents pursuant to the subpoena, and never alleged that she faced any penalty for not responding to the subpoena. Accordingly, plaintiff has not stated a claim for unjust enrichment and Count VI of plaintiff's claim should be dismissed.

### F. Plaintiff has not Stated a Claim for Breach of Fiduciary Duty

Plaintiff's claim for breach of fiduciary duty appears to be that defendants had an interest in pursuing a claim against OneTaste while representing plaintiff. Again, the cases cited by plaintiff are instructive. Plaintiff cites to *Simons v. Royer Cooper Cohen Braunfeld, L.L.C.*, 587 F. Supp. 3d 209, 219 (E.D. Pa. 2022), where the court held: "A claim for breach of fiduciary duty requires a plaintiff to demonstrate that: (1) the defendants negligently or intentionally failed to act in good faith and solely for their benefit; (2) he suffered injury; and (3) the defendants' failure to act solely for his benefit was a real factor in bringing about his injury." However, plaintiff ignores that the court granted a motion to dismiss the breach of fiduciary duty claim against the Royer firm because:

> The Royer firm argues that Simons has failed to plead a viable claim for breach of fiduciary duty because he provides no explanation for his allegation that representing both RDS and Simons during these negotiations constituted a concurrent conflict of interest. Plaintiff asserts that the conflict of interest "is self-evident" and that dual representation compromised the Royer firm's ability to show "absolute loyalty to Simons." However, as the Royer firm notes, the Amended Complaint does not explain how Simons's interests were directly adverse to those of the company, or how such dual representation, assuming it existed, materially limited the Royer firm's ability to represent Simons.

*Id.* Similarly here, plaintiff's assertion that defendant had an interest in pursuing a civil action against OneTaste does not explain how plaintiff's interests were directly adverse or how the alleged conflict materially limited defendants' ability to represent plaintiff in responding to the subpoena. As set forth at length in the motion to dismiss, the undisputed facts are that defendants represented plaintiff in responding to a subpoena that she never actually had to respond to. Plaintiff has utterly failed to establish that defendants were materially limited in assisting plaintiff due to their potential interest in pursuing claims against OneTaste.

### G. Plaintiff has not Stated a Claim for Breach of Contract

In Count VIII, plaintiff purports to assert a claim for Breach of Contract, but she fails to establish both that defendants breached a specific executory promise in the representation agreement, and that she suffered any actual damages from the purported breach of the representation agreement, and therefore has failed to state a claim for breach of contract. *See Kelly v. Carman Corp.*, 229 A.3d 634, 653 (Pa. Super. 2020) (setting forth elements of breach of contract).

In her Response, plaintiff maintains that defendants' position is that "the gist of the action doctrine bars plaintiff's tort claims." Doc. 31 at ECF 21. However, as defendants stated in their opening brief, the Pennsylvania Superior Court recently held that the gist of the action doctrine *does not "convert" tort claims to contract claims*—a party may have both a tort claim and a contract claim in the same action but, in order to maintain a breach of contract claim, there must be "specific promises in the Contract, *i.e.*, contractual duties sufficient to maintain breach-of-contract claims." *Swatt v. Nottingham Vill.*, 342 A.3d 23, 52 (Pa. Super. 2025) (emphasis added). Here, Count VIII of plaintiff's complaint asserts only that "Defendants breached the Retainer Agreement by failing to act and acting to Plaintiff's detriment." Exhibit "A" at ¶ 141. Accordingly, plaintiff has failed to identify a specific executory promise defendants allegedly breached.[5]

Furthermore, in her response, plaintiff fails to address how a purported breach of the retention agreement resulted in any actual damages. Accordingly, plaintiff has failed to set forth

---

[5] In her Response, plaintiff cites *Heller v. Deutsche Bank AG* for the proposition that a contract for legal services "contains an implied promise to render services in accordance with professional standards." No. CIV.A. 04-CV-3571, 2005 WL 525401, at *8 (E.D. Pa. Mar. 3, 2005)  However, *Heller*, which addresses contracts for professional services (not just legal services), was decided prior to *Swatt, supra,* which does not explicitly overrule *Heller* or the cases it cites for this proposition, but does clearly establish that, in the context of a contract for professional services, a plaintiff must establish that the defendant breached a specific executory provision of the contract, which plaintiff has failed to do. *Swatt, supra,* at 52.

the necessary elements to establish a breach of contract claim, and Count VIII of plaintiff's complaint should be dismissed.

### H. Plaintiff is not Entitled to Prejudgment Interest and has not Stated a Claim for Punitive Damages

Plaintiff does not actually make any argument that she is entitled to prejudgment interest or punitive damages. As set forth at length in defendants' motion to dismiss, a claim for prejudgment interest in Pennsylvania is only permissible when the amount of damages is liquidated. There is no claim for liquidated damages, nor is the request for damages in a sum certain. No claim for prejudgment interest lies.

Likewise, plaintiff has not stated any basis for a claim for punitive damages. Plaintiff's response to defendants' motion to dismiss does not attempt to justify the claim for punitive damages other than to baldly assert the "allegations are sufficient to support such a claim at the pleading stage." Plaintiff's reliance on *Hutchison ex rel. Hutchison v. Luddy*, 582 Pa. 114, 116, 870 A.2d 766, 767 (2005) is utterly unfounded as that matter involved a claim of a priest sexually abusing a minor with intellectual deficits beginning at the age of ten or eleven. There is no similarity between that matter and the present action which alleges- at worst- that defendants attempted to sign plaintiff up as a litigant in a civil suit against OneTaste while they were representing her in responding to a subpoena that was issued to plaintiff as a result of the criminal actions of OneTaste's founders.

## III. CONCLUSION

Based on the foregoing, as well as the arguments set forth in Defendants' opening brief in support of their motion to dismiss, defendants Kohn, Swift & Graf, P.C. and Neil L. Glazer respectfully request that this Honorable Court grant their motion to dismiss plaintiff's complaint and that an Order is entered dismissing all claims against defendants.

**MARSHALL DENNEHEY P.C.**

By  _____
Josh J.T. Byrne, Esquire
2000 Market Street, Ste. 2300
Philadelphia, PA 19103
(215) 575-2805
JTByrne@mdwcg.com
Attorney for Defendants

Date: November 5, 2025

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALISHA PRICE | Case No.: 2:24-cv-05684-GAM |
| v. | Civil Action |
| KOHN, SWIFT & GRAF, P.C. and NEIL L. GLAZER | |

**CERTIFICATE OF SERVICE**

I, Josh J. T. Byrne, Esquire, do hereby certify that a true and correct copy of my Reply Brief of Defendants Kohn, Swift & Graf, P.C. and Neil L. Glazer in Support of Motion to Dismiss, was electronically filed with the Court on the date below and is available for viewing and downloading from the ECF System.

**MARSHALL DENNEHEY, P.C.**

BY: _____
Josh J.T. Byrne, Esquire
PA ID No.: 85474
2000 Market Street, Suite 2300
Philadelphia, PA 19103
jtbyrne@mdwcg.com
(215) 575-2805
Attorney for Defendants,
Kohn, Swift & Graf, P.C. and Neil L. Glazer

Date: November 5, 2025