# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALISHA PRICE** | : | |
| | : | **CIVIL ACTION** |
| v. | : | No. 24-5684 |
| | : | |
| **KOHN, SWIFT & GRAF, P.C.,** *et al.* | : | |

**McHUGH, J.**                                                                                           **December 3, 2025**

## MEMORANDUM

This civil action arises out of a law firm's representation of a potential witness after she received a subpoena from the Federal Bureau of Investigation relating to its criminal investigation into a controversial sexual wellness education company. Plaintiff Alisha Price, a former employee of the company, retained Defendants Kohn, Swift & Graf, P.C. and Neil L. Glazer, Esq.,[1] to represent her in responding to the subpoena. The centerpiece of the Complaint is a claim for purported legal malpractice, supplemented by several peripheral claims all arising out of the same conduct. Price's central claim of legal malpractice is palpably lacking in merit, because the fair inference from the facts alleged establishes that Defendants fulfilled the task they were retained to perform—protecting her against having to testify. And Price points to no adverse outcome other than personal irritation stemming from her belief that counsel harbored an ulterior motive—seeking to represent her in a civil action against her former employer.[2] Price's remaining claims

---

[1] Although Glazer no longer works at Kohn, Swift & Graf, P.C., he was employed as an attorney there during the period relevant to the allegations in the Complaint.

[2] On June 9, 2025, a jury convicted the company's founder and former head of sales of forced labor conspiracy in violation of federal law. Jury Verdict, *United States v. Daedone*, No. 23-cr-146 (E.D.N.Y. June 9, 2025), ECF 408. The Government's case involved extensive testimony by former employees that the defendants engaged in abusive employment practices, including a requirement that employees work long hours seven days per week with little or no compensation and provide various sexual services. Transcript of Jury Trial, *United States v. Daedone*, No. 23-cr-146 (E.D.N.Y. June 9, 2025), ECF 431-447.

are even more deficient. Because I agree with Defendants that the Complaint fails to allege any plausible claim, their Motion to Dismiss will be granted.

**I.     Facts as Pled**

In April 2021, FBI agents served Price with a subpoena issued in connection with the agency's criminal investigation into Price's former employer, OneTaste, Inc. (OneTaste). Compl. ¶¶ 43-44, ECF 1. The FBI agents advised Price that she could either speak with them at that moment or be required to provide an in-person statement in New York City two weeks later. *Id.* ¶ 44. The agents further advised Price that if she failed to appear for questioning willingly, she would be arrested and transported to New York to give the requested statement. *Id.* ¶ 46. Shortly thereafter, Price retained Defendants to represent her in connection with responding to the subpoena, paying them a $2,500 flat fee for their services.[3] *Id.* ¶¶ 47-49; *see* Retention Agreement at 2, ECF 28-3. The parties' retention agreement defined the limited scope of the representation, in relevant part, as follows:

> [T]his law firm will represent you in connection with an investigation by the United States governing concerning OneTaste, Nicole Daedone and/or other persons and entities affiliated with or connected to them []. As we discussed, we will agree to represent you in connection with this [m]atter during an initial phase in which we can provide you with limited services . . . that can be handled via telephone, email and other means that do not require any travel on our part with respect to this [m]atter for a flat fee of two-thousand five hundred dollars ($2,500.00). This will include communications with you as well as with the U.S. Attorney's Office and the FBI (and any other governmental agencies that might be involved in this [m]atter), and it will also include working with you remotely to review, preserve, collect and, if required, produce documents, communications and other materials to the United States government.

Retention Agreement at 2.

---

[3] Although the record appears to lack a fully executed version of the retainer agreement, neither party challenges the agreement's validity.

2

Price expressed to Glazer, who served as her primary contact at the firm, that she did not want to participate in the FBI's investigation and insisted she was not a victim of any crimes during her employment with OneTaste. Compl. ¶ 56. But Glazer advised her that "when the FBI wants to talk to you, you do not have a choice." *Id.* ¶ 51. Ultimately, although the FBI agents told Price she would have to provide an in-person statement in two weeks, that never occurred. *Id.* ¶¶ 58-59. Over the next three months, without receiving an update on the FBI's investigation, Price purportedly experienced anxiety and stress about the lingering prospect of giving a statement. *Id.* ¶ 61. She describes the emotional toll as affecting her work performance, and, in September 2021, she was terminated from her job, after which she contacted Glazer, who put her in touch with a federal victim witness specialist to help Price cope with her mental health challenges. *See id.* ¶¶ 61-73.

About a year later, in August 2022, Glazer informed Price that the FBI requested her presence in New York City to testify about her experience at OneTaste, to which Price responded by again expressing her apprehension about participating in the investigation. *Id.* ¶ 78. Glazer outlined a "detailed picture" of the process through which Price would testify and potentially participate in a trial. *Id.* ¶ 80. He added that if OneTaste's owner was found guilty, Defendants could bring a civil action against OneTaste, which "could be very lucrative" for Price. *Id.* ¶ 83.

Later that month, Glazer connected Price with another federal victim specialist to whom Price reiterated that she did not want to participate in the FBI's investigation and explained the toll it was inflicting on her mental health. *Id.* ¶¶ 86-90. Price also lamented that the FBI and Glazer were mistakenly treating her as a crime victim, a portrayal with which she adamantly disagreed. *Id.* ¶ 91. Soon thereafter, Price told Glazer that she wanted Glazer and the FBI to stop contacting her. *Id.* ¶ 92. According to the Complaint, Glazer extracted a concession from the FBI: "Glazer

told Plaintiff that he had talked to the FBI and that the FBI had acknowledged to him that agents ambushed Plaintiff at Plaintiff's mother's home with a subpoena was traumatizing and an overreach on the FBI's part." *Id.* ¶ 85. In September 2022, the victim specialist informed Price that she would "not reach out to [you] in the future to respect your boundaries," *id.* ¶ 93; that she and the FBI "spoke to [Glazer] and told him we won't push you," *id.* ¶ 94; and that "you will not be hearing from us," *id.* ¶ 98.

On September 13, 2022, Price emailed Glazer to terminate the representation; Glazer did not respond. *Id.* ¶ 99. In June 2023, Glazer emailed Price, informing her that the FBI's investigation resulted in the OneTaste executives' criminal indictments. *Id.* ¶ 100. Price describes Defendants' alleged "refus[al] to help her resolve the matter [for which] she had retained them" as being motivated by their financial incentive to wait until after the criminal indictments were issued to then sue OneTaste, which they ultimately did in June 2024. *Id.* ¶¶ 102-03. Around that same time, Price requested her case file from Defendants, which she claims they still have not produced in violation of their ethical duties under the Rules of Professional Conduct. *Id.* ¶ 103.

## II. Standard of Review

Within the Third Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III. Discussion

### A. Pennsylvania law governs this action.

The retention agreement contains a choice-of-law provision specifying that Pennsylvania law governs the relationship between the parties. Retention Agreement at 3. That does not necessarily obviate the need for a choice-of-law analysis. *Collins v. Mary Kay, Inc.*, 874 F.3d 176,

4

183 (3d Cir. 2017) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Here, however, by relying (almost)[4] exclusively on Pennsylvania law in their submissions, the parties implicitly agree that Pennsylvania law applies, rendering a choice-of-law analysis unnecessary. *See Atl. States Ins. Co. v. Copart, Inc.*, 609 F. Supp. 3d 379, 387 (E.D. Pa. 2022) ("Moreover, when parties agree upon the law to be applied, a choice of law analysis is unnecessary."); *McCoy v. Cwork Sols., LP*, No. 18-cv-4079, 2022 WL 1275005, at *1 n.1 (E.D. Pa. Apr. 28, 2022). The motion will therefore be addressed under Pennsylvania law.

### B.  Price has not plausibly stated any claims against Defendants.

#### 1. *Legal Malpractice*

To establish legal malpractice under Pennsylvania law, a plaintiff must prove the following three elements: (1) the attorney's employment or other basis for a duty; (2) the attorney's failure to exercise ordinary skill and knowledge; and (3) that such negligence proximately caused damage to the plaintiff. *Kituskie v. Corbman*, 714 A.2d 1027, 1029 (Pa. 1998). Importantly, the plaintiff must prove the attorney's failure caused *actual loss*—nominal damages, speculative harm, or threat of future harm are insufficient. *Id.* at 1030. Proof that an attorney's conduct affected the outcome of a matter is often referred to as proving a "case within a case." *Id.*

Here, Price's own allegations show that Defendants did precisely what Price retained them to do: communicate on her behalf with federal government actors in connection with responding to the subpoena issued to her as part of the FBI's criminal investigation into OneTaste. Retention Agreement at 2. Conspicuously absent from the Complaint are any allegations that Price even had to respond to the subpoena, either by providing testimony or producing documents, or that she

---

[4] As discussed below, Price's separate contention that New York Judiciary Law § 487 applies is meritless.

faced any legally cognizable consequences for not responding. Counsel's unwelcome advice that Price could not avoid speaking with the FBI, if it insisted, accurately reflected the legal reality she faced, and any attempts to reconcile her to that reality and to prepare her mentally and emotionally to be interviewed or testify, cannot be deemed a breach of the standard of care. Price summarily alleges that she "would have had a better result in the underlying matter" but for Defendants' purported negligence," Compl. ¶ 107, but fails to delineate what that would be, which is hardly surprising given that she was never required to comply with the subpoena. And counsel's efforts to connect Price with victim specialists can hardly form the basis for a malpractice claim, particularly when the facts as pleaded suggest that such contacts ultimately helped persuade the FBI to back away from its pressure tactics.

Beyond failing to plead a breach of the standard of care, Price has necessarily failed to show how counsel's representation proximately caused her to lose her job or suffer other consequences. As noted above, the FBI can compel witness cooperation, and there is inherent stress and anxiety in being involved in a criminal investigation that even the most skilled lawyer cannot obviate. Ironically, counsel here is faulted for taking one of the few steps available: referrals to specialists who provide support to victims and witnesses. Price further complains of a lack of sensitivity on counsel's part and poor communication, but such subjective dissatisfaction does not suffice to state a malpractice claim. And her complaint that counsel has not turned over her case file in violation of the Rules of Professional Conduct is also not a basis for a malpractice claim, because the Rules do "not have the force of substantive law." *In re Est. of Pedrick*, 482 A.2d 215, 217 (Pa. 1984).

### 2. *Fraud*

Price's second claim is that Defendants committed fraud by failing to disclose their "true intention" was to frame her as a crime victim to aid the government's prosecution of OneTaste's executives, which, if successful, would enable them to bring a potentially lucrative civil action against the company.

Under Pennsylvania law, the elements of intentional misrepresentation or non-disclosure sounding in fraud include: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994). When alleging fraud in federal court, Rule 9(b)'s heightened pleading standard requires the plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This means alleging "all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where, and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016); *see also Bd. of Trs. of Teamsters Loc. 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 172 n.10 (3d Cir. 2002) (instructing that the plaintiff may also satisfy this heightened pleading standard "by using some means of injecting precision and some measure of substantiation into their allegations of fraud.") (citation modified).

The Complaint falls well short of Rule 9(b)'s particularity requirement. Price fails to point to any false statement, misrepresentation, or omission by Defendants that was material to "the transaction at hand," *i.e.*, their representation of her in connection with responding to the FBI's subpoena. According to the Complaint, Glazer explained the process that Price would have had

to follow *if* she was required to testify in the underlying criminal action, Compl. ¶ 80, which she was not. And Glazer later suggested to Price that if OneTaste's owner was found guilty, Defendants could potentially sue the company, which could be lucrative for Price. *Id.* ¶ 83. Contrary to Price's position, neither statement plausibly shows Defendants took Price on as a client to exploit her for ulterior, unlawful purposes, or that they were somehow secretly colluding with the federal government against her best interests. In fact, Glazer's first representation aligned squarely with Defendants' obligation under the retainer agreement—*i.e.*, to represent Price in connection with responding to the subpoena. And the second, which plainly lacks the particularity that Rule 9(b) requires, merely suggested a possible future action upon which Price did not rely since she rejected the characterization of her as a victim, she did not assist the FBI's investigation, and she did not bring a subsequent civil suit. Accordingly, Price's fraud claim is fatally deficient.

### 3. *Intentional Infliction of Emotional Distress*

Price's third claim is that Defendants' purported scheme supports a cause of action for intentional infliction of emotional distress (IIED). As I have previously observed, "[t]his 'highly circumscribed' tort requires conduct to pass the boundary of civilized behavior into the 'extreme and outrageous' before it can be actionable. Many decisions have discussed IIED, but courts rarely find that the facts alleged meet this rigorous standard." *Smith v. RB Distribution, Inc.*, 515 F. Supp. 3d 311, 313 (E.D. Pa. 2021).

The Pennsylvania Supreme Court has cited the Restatement (Second) of Torts § 46 as setting the minimum necessary elements. *Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000). Relevant here, Section 46(1) provides that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

8

Restatement (Second) of Torts § 46(1).  Thus, Pennsylvania courts require the defendant's alleged conduct to be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Buczek v. First Nat. Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987); *see Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) ("Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct."); *e.g.*, *Banyas v. Lower Bucks Hosp.*, 437 A.2d 1236, 1239 (Pa. Super. Ct. 1981) (finding sufficient basis for IIED claim where defendants intentionally fabricated records to indicate plaintiff killed the victim resulting in plaintiff being wrongly charged with homicide).  Importantly, "to state a claim under which relief can be granted for the tort of intentional infliction of emotional distress, the plaintiffs must allege physical injury."  *Hart v. O'Malley*, 647 A.2d 542, 554 (Pa. Super. Ct. 1994), *aff'd*, 676 A.2d 222 (Pa. 1996).

Here, Price alleges that Defendants "viewed [her] as a target rather than a witness," Compl. ¶ 32, betrayed her by "collaborat[ing] with the FBI against her," *id.* ¶ 28, and attempted to coerce her to participate in the FBI's investigation to serve their ulterior financial motive, *id.* ¶ 30.  Price claims that Defendants engaged in shocking, repugnant, and outrageous conduct by attempting to manipulate her sexual experiences to serve their "true goal" of suing OneTaste.  Opp. to Mot. to Dismiss at 16-17, ECF 31.  She argues that Defendants recklessly or, at least negligently, ignored her instructions to swiftly end the prospect of her participation in the FBI's investigation and, instead, wrongly advised her about the process of complying with the subpoena to prolong her involvement in the criminal action.  *Id.* at 17-18.

However one characterizes Defendants' conduct here, I have no hesitation in concluding that Price's allegations do not suffice under the demanding standard recognized by Pennsylvania

9

courts. As set forth above, on the facts alleged here, no lawyer could have forestalled Price's compliance with the subpoena if the FBI chose to enforce it. Glazer's explanation of the process through which Price would have had to comply with the subpoena, and his alleged suggestion about a possible post-indictment civil action against the company, did not fall outside the bounds of professional standards let alone constitute the rare form of "egregious conduct" Pennsylvania courts have found actionable. Given the emotional distress she alleges, referral to a victim-witness specialist can hardly be deemed outrageous. And as also noted above, much of Price's emotional distress derived from the inherent stress of being caught up in a criminal investigation.

Price's related claim for negligent infliction of emotional distress fails as well. Absent compelling circumstances not present in this case, "there can be no recovery for negligently inflicted mental or emotional distress in the absence of attendant physical injury to the person of the claimant." *Houston v. Texaco, Inc.*, 538 A.2d 502, 505 (Pa. Super. Ct. 1988); *Rolla v. Westmoreland Health Sys.*, 651 A.2d 160, 163 (Pa. Super. Ct. 1994) ("Pennsylvania case law similarly establishes that, except in limited, compelling circumstances, not applicable here, a claimant may not recover damages for negligently inflicted emotional distress in the absence of attendant physical injury."). For those reasons, both emotional distress claims must be dismissed.

### 4. *New York Judiciary Law § 487*

Price also claims she is entitled to relief under a New York statute governing attorney misconduct, which provides that an attorney who

1. Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; or,

2. Wilfully delays his client's suit with a view to his own gain; or, wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for,

> Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

N.Y. Judiciary Law § 487; Compl. ¶¶ 124-27.

Price submits that this law applies because "[t]he Complaint alleges acts connected to New York, including the request that plaintiff travel to New York to support an FBI investigation." Opp. to Mot. to Dismiss at 19. Alternatively, she argues, that "even if Pennsylvania law applies, dismissal under Rule 12(b)(6) is improper because choice of law is a factual inquiry." *Id.* (citations omitted). I disagree.

Price neither alleges she had to comply with the subpoena by going to New York nor that any of the alleged conduct occurred there. A fuller factual record would not aid this inquiry, and it is therefore appropriate at this stage to decide whether New York law applies. *Reginella Const. Co. v. Travelers Cas. & Sur. Co. of Am.*, 949 F. Supp. 2d 599, 609 (W.D. Pa. 2013) ("A choice of law analysis is appropriate at the Rule 12(b)(6) stage when it is not dependent on factual issues that can be probed only with the assistance of a fully developed record."); *see also Energy Coal v. CITGO Petroleum Corp.*, 836 F.3d 457, 459 (5th Cir. 2016). Because no event in this case occurred in New York, there simply is no basis to apply New York law.

Even if the statute were deemed applicable, Price would not state a claim. New York's highest court has repeatedly made clear that Section 487 "guards against false statements by lawyers *during litigation*, rising to the level of intentional deceit or collusion; it was not designed to curtail attorneys' expressions of views concerning what the law is or should be, nor does it include merely poor lawyering, negligent legal research or the giving of questionable legal advice." *Urias v. Daniel P. Buttafuoco & Assocs., PLLC*, 238 N.E.3d 836, 842 (N.Y. 2024) (quoting *Bill Birds, Inc. v. Stein L. Firm, P.C.*, 149 N.E.3d 888, 892 n.3 (N.Y. 2020) (emphasis added)).

Importantly, "[p]rofessional shortcomings or disagreements as to litigation strategy that do not involve intentional false statements *in the context of litigation* may sound in legal malpractice, but not in attorney deceit." *Id.* (emphasis added); *see also Bill Birds*, 149 N.E.3d at 891-92 (explaining that Section 487 provides "a particularized civil remedy, and criminal liability, for a specialized form of attorney misconduct occurring during the pendency of litigation."). And Price faces yet another obstacle, as the civil remedy she invokes applies only where an attorney engages in egregious conduct or repeated acts of misconduct. *Mohammad v. Rehman*, 236 A.D.3d 892, 894 (2nd Dep't 2025) ("Relief pursuant to Judiciary Law § 487 is not lightly given, and requires a showing of egregious conduct or a chronic and extreme pattern of behavior on the part of the . . . attorney[.]"); *e.g.*, *Solow Mgmt. Corp. v. Seltzer*, 18 A.D.3d 399, 448 (1st Dep't 2005) (holding that the complaint, which alleged one arguable misrepresentation by the attorney, did not state a cognizable claim under Section 487). Here, Price's allegations involve a single representation.

For all these reasons, this claim must also be dismissed.

    5.  *Unjust Enrichment*

Price also brings an unjust enrichment claim, asserting she paid Defendants for services they did not provide. Unjust enrichment is "the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution." *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1034 (Pa. 2018) (quoting *Roethlein v. Portnoff Law Assocs., Ltd.*, 81 A.3d 816, 825 n.8 (Pa. 2013)). To establish an unjust enrichment claim under Pennsylvania law, the plaintiff must prove (1) that he conferred a benefit on the defendant, which (2) the defendant appreciated, and (3) that it would be inequitable for the defendant to retain the benefit under the

circumstances without payment of value. *Liberty Mut. Grp., Inc. v. 700 Pharmacy, LLC*, 270 A.3d 537, 554 (Pa. Super. Ct. 2022).

Here, Price paid Defendants a flat fee of $2,500 to represent her in connection with responding to the FBI's subpoena, which included communicating on her behalf with the relevant federal government actors. Compl. ¶¶ 47-49; Retention Agreement at 2. That's precisely what they did. Again, Price does not allege she had to respond to the subpoena or faced any consequences for not doing so. Additionally, because Price has not plausibly alleged that Defendants committed fraud, as discussed above, it follows that her allegation that Defendants "were enriched even further as they capitalized on their dishonesty and manipulation" to sue OneTaste is similarly implausible. Compl. ¶ 130. Without any allegations plausibly showing Defendants received a benefit from Price to which they were not entitled, this claim cannot survive.

### 6. *Breach of Fiduciary Duty*

Price's next claim—that Defendants breached their fiduciary duty to her by pursuing ulterior financial interests while representing her—also lacks merit. Under well-established common law, an attorney owes a fiduciary duty to his client, which requires "undivided loyalty and prohibits the attorney from engaging in conflicts of interest." *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1283 (Pa. 1992). Courts applying Pennsylvania law construe a breach of fiduciary duty claim in the legal malpractice context to implicate only the attorney's duty of loyalty, not the attorney's duty of care. *See, e.g.*, *Gorski v. Smith*, 812 A.2d 683, 712 (Pa. Super. Ct. 2002) (vacating judgment entered after jury verdict on fiduciary duty claim against former counsel because evidence did not show a conflict of interest existed); *Nkansah v. Kleinbard LLC*, No. 19-cv-4472, 2020 WL 920269, at *6-7 (E.D. Pa. Feb. 26, 2020) (dismissing fiduciary duty claim for failing to show disloyalty and collecting cases). Therefore, to prevail on a breach

13

of fiduciary claim, the plaintiff must show: (1) the defendant negligently or intentionally failed to act in good faith and solely for the plaintiff's benefit; and (2) the defendant's breach proximately caused the plaintiff's injury. *See Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 88 (Pa. 2023).

Here, Price alleges in the most conclusory fashion that Defendants "created their own conflict of interest and capitalized on the same," but does not provide any facts to show a conflict existed. Compl. ¶ 134. Indeed, there are no facts indicating that Defendants colluded with the FBI, as Price claims, or that Defendants profited in any way from their limited representation of Price other than receiving the $2,500 flat fee to which they were contractually entitled. In her opposition, Price cites Glazer's suggestion about filing a subsequent civil suit against OneTaste and his referrals to specialists who provide support to victims and witnesses as grounds for her claim. Opp. to Mot. to Dismiss at 20. These allegations do not remotely suggest disloyalty. Even assuming Defendants had an interest in pursuing a civil lawsuit against the company, Price fails to show how that interest prevented them from advancing her specific goal of not having to respond to the subpoena. Nor does she point to any definable injury from the supposed breach of loyalty.

Once again, Price fails to state a claim.

### 7. *Breach of Contract*

Price's final claim is that Defendants breached the retainer agreement by "failing to act and acting to [her] detriment." Compl. ¶ 141. To plead a breach of contract claim, the plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) breach; and (3) damages. *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016).

Although Price indisputably meets the first element given the parties' retention agreement, she fails to plead the latter two requirements. Indeed, the Complaint lacks any allegations

14

evidencing that Defendants breached the agreement, which outlined the limited scope of Price's representation as follows:

> [T]his law firm will represent you in connection with an investigation by the United States governing concerning OneTaste, Nicole Daedone and/or other persons and entities affiliated with or connected to them []. As we discussed, we will agree to represent you in connection with this [m]atter during an initial phase in which we can provide you with limited services . . . that can be handled via telephone, email and other means that do not require any travel on our part with respect to this [m]atter for a flat fee of two-thousand five hundred dollars ($2,500.00). *This will include communications with you as well as with the U.S. Attorney's Office and the FBI (and any other governmental agencies that might be involved in this [m]atter), and it will also include working with you remotely to review, preserve, collect and, if required, produce documents, communications and other materials to the United States government.*

Retention Agreement at 2 (emphasis added). Accepting the facts alleged as true, Defendants did what Price retained them to do. Again, Price does not allege that she had to respond to the subpoena or that she faced any consequences for not responding. Because there was no breach, Price necessarily did not incur any legally cognizable damages as a result.

Consequently, this breach of contract claim fails.

## IV. Conclusion

For the reasons set forth above, I will grant Defendants' Motion to Dismiss. Dismissal will be with prejudice, because given this case's baseline facts—specifically the limited scope of retention for a flat fee and counsel's having achieved the client's goal of not having to respond to the subpoena—I can conceive of no plausible theory of recovery, rendering amendment futile. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (explaining that denial of leave to amend is justified where "amendment would not cure the deficiency."). An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge